**EXHIBIT K**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| KB TOYS, INC., *et al.*, | : | Case No. 04-10120 (JBR) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| BIG LOTS STORES, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| Vs. | : | Adversary No. 04-53134 (JBR) |
| | : | |
| KB ACQUISITION CORPORATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**<u>PLAINTIFF'S OPENING BRIEF IN SUPPORT OF SUMMARY JUDGMENT</u>**

Dated: May 20, 2004

BLANK ROME LLP
Michael D. DeBaecke (No. 3186)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19899
(302) 425-6412

and

Robert J. Sidman
William D. Kloss, Jr.
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, Ohio 43215
(614) 464-6400
Attorneys for Big Lots Stores, Inc.

120156.01600/40140006v1

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................................... ii

I. INTRODUCTION ...............................................................................................................1

II. SUMMARY JUDGMENT STANDARD AND UNDISPUTED FACTS ..........................2

    A. The Refunds Of Taxes Were Excluded From The Price Of The Stock And Therefore KB Acquisition Paid No Consideration For Their Transfer................... 2

    B. The Balance Sheets And Journal Entries Of The KB Entities, Which Were Prepared By Debtors, Confirm That The Refunds Of Taxes Were Not Sold By Big Lots. ............................................................................................................ 4

    C. The Stock Purchase Agreement Was Subject To An Election Under Internal Revenue Code § 338(h)(10) And No Amount Of The Price Paid By KB Acquisition Was Allocated To The Refunds Of Taxes. ................................ 5

III. ARGUMENT ......................................................................................................................7

    A. Big Lots Owns The Refunds Of Taxes And They Were Not Transferred As Part Of The Stock Purchase Agreement. ............................................................... 7

        1. Big Lots Received No Consideration For Refunds Of Taxes From KB Acquisition. ................................................................................................ 7

        2. The Financial Documents Of The KB Entities Prepared By The Parties As Required By The Stock Purchase Agreement Confirm That The Refunds of Taxes Were Not Transferred To KB Acquisition And/Or The KB Entities. .................................................................. 8

    B. The Fact That None Of The Price Was Allocated To The Refunds Of Taxes By The Parties' Mutual Election Under Internal Revenue Code Section 338(h)(10) Conclusively Establishes That The Refunds Of Taxes Were Not Transferred By Big Lots. ............................................................................ 9

    C. Because The Undisputed Facts And The Law Establish Its Ownership Of The Refunds Of Taxes, Big Lots Is Entitled To Summary Judgment................... 10

IV. CONCLUSION ................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

Acorn Constr., Ltd. v. Kraus, 1986 WL 5872 (Del. Super. 1986) ...................................... 7

Egervary v. Young, 2004 WL 912811 (3rd Cir. 2004) ...................................... 2

Heckman v. Nero, 1999 WL 182570 (Del. Ch. 1999) ...................................... 7

Adcor Indus. v. Crown-Simplimatic, Inc. (In re Crown-Simplimatic, Inc.), 299 B.R. 319 (Bankr. De. 2003) ...................................... 10

US Wood Products, Inc. v. SOL Building Material Corp., 2004 WL 870830 (Bankr. D. Del. 2004) ...................................... 2

William Lloyd, Inc. v. Hrab, 1999 WL 1611315 (Del. Super. 1999) ...................................... 7

**Other Authorities**

*Black's Law Dictionary*, 130 (5th Ed. 1979) ...................................... 8

Financial Accounting Standards Board Bulletin (ARB) 43 ...................................... 5

Internal Revenue Code § 338(a) ...................................... 9,10

Internal Revenue Code § 338(h)(10) ...................................... 6, 9,11

*Original Pronouncements, Accounting Standards*, CON 5 (Financial Accounting Standards Board 1998) ...................................... 8

Treas. Reg. §1.338 ...................................... 10

Treas. Reg. §1.338(h)(10)-(1)(c)(3) ...................................... 10

Treas. Reg. §1.338(h)(10)-(d) ...................................... 10

Treas. Reg. §1.338-6 ...................................... 10

**Rules**

Fed. R. Civ. P. 56(c) ...................................... 4

120156.01600/40140006v1

I.  **INTRODUCTION**

Through its adversary complaint, Plaintiff Big Lots Stores, Inc. ("Big Lots") seeks declaratory relief, an accounting and money judgment, damages for conversion and injunctive relief against the Debtors.[1] Big Lots' claims arise from the Debtors' wrongful taking and continued retention of certain tax refunds (the "Refunds of Taxes") belonging to Big Lots.

Big Lots' claims hinge upon a finding that it, rather than the Debtors, is the owner of the Refunds of Taxes. In that regard, the undisputed facts establish that the Refunds of Taxes are Big Lots' property because:

(1) The Refunds of Taxes were not priced in the Stock Purchase Agreement at issue and, therefore, KB Acquisition paid no consideration for their transfer;

(2) The consolidated balance sheet of the KB Entities on the date of the closing of the Stock Purchase Agreement confirms that the Refunds of Taxes were not assets of the KB Entities on the closing date and, therefore, were not purchased by KB Acquisition Corporation ("KB Acquisition");

(3) The accounting journal entries for the KB Entities confirm that the Refunds of Taxes were removed from the balance sheet of the KB Entities and transferred to Big Lots prior to the closing of the Stock Purchase Agreement;

(4) Under the Stock Purchase Agreement, Big Lots and debtor KB Acquisition made a joint election under Section 338(h)(10) of the Internal Revenue Code. Any such election required Big Lots and KB Acquisition to agree on an allocation of the purchase price to all assets transferred as part of the sale. No price was allocated to the Refunds of Taxes because they were not part of the sale.

(5) Debtors have received and will continue to receive the Refunds of Taxes belonging to Big Lots. Despite numerous demands, Debtors refuse to turn over the Refunds of Taxes to Big Lots.

---

[1] Debtors include KB Acquisition Corporation and all of its affiliates, all of whom filed for relief under Chapter 11 of the Bankruptcy Code, and all of whom are defendants herein.

1

120156.01600/40140006v1

Based upon the foregoing, Big Lots is entitled to summary judgment: (1) declaring that the Refunds of Taxes are not property of the Debtors and directing that they be turned over to Big Lots; (2) requiring a full accounting by the Debtors of the Refunds of Taxes previously received by them; (3) imposing a liability judgment in its favor based upon the Debtors' conversion of the Refunds of Taxes; and (4) entering an injunction prohibiting the Debtors from asserting any rights to the Refunds of Taxes presently held, or to be received by, Debtors.

## II.     SUMMARY JUDGMENT STANDARD AND UNDISPUTED FACTS

"Summary judgment is appropriate if there exists no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law." US Wood Products, Inc. v. SOL Building Material Corp., 2004 WL 870830 (Bankr. D. Del. 2004) (copy attached hereto as exhibit "B"); see also Egervary v. Young, 2004 WL 912811 * 7 (3d. Cir. 2004) (citing Fed. R. Civ. P. 56(c)) (copy attached hereto as exhibit "C"). As set forth below, Big Lots meets this standard and is entitled to summary judgment.

### A.     The Refunds Of Taxes Were Excluded From The Price Of The Stock And Therefore KB Acquisition Paid No Consideration For Their Transfer.

In 2000, Big Lots sold to Debtor KB Acquisition the business known as KB Toys (the "KB Entities")[2]. See Affidavit of L. Michael Watts at ¶ 3 (hereinafter "Watts Aff."). The sale was pursuant to a December 7, 2000 Stock Purchase Agreement. Id. A true and accurate copy of the Stock Purchase Agreement is attached hereto as Exhibit A-1. Id.

Two dates are critical to determining the consideration paid to Big Lots by KB Acquisition: the "Balance Sheet Date" and the "Closing Date." Id. at ¶ 5. Both are defined in the Stock Purchase Agreement as October 28, 2000 and December 7, 2000, respectively. Id. at ¶

---

[2] The KB Toy business operates through various subsidiaries of KB Acquisition.

2

6. Pursuant to Section 2.01 of the Stock Purchase Agreement, the aggregate purchase price received by Big Lots for the KB Entities consisted of three elements (1) "Cash Consideration"; (2) a note; and (3) stock warrants. Id. at ¶ 9. The Cash Consideration to be paid by KB Acquisition was based upon an "effective close" for pricing purposes on October 28, 2000. Id. at ¶ 10. But because the actual closing was not until over one month later, the Cash Consideration was adjusted to account for the business activities of the KB Entities between the Balance Sheet Date and the Closing Date. Id.

Section 2.01 of the Stock Purchase Agreement defines "Cash Consideration" to include, among other things, a "Working Capital Adjustment." Id. at ¶ 11. The "Working Capital Adjustment" is defined in Section 1.01 as the difference between the "Balance Sheet Date Working Capital" and the "Target Working Capital." Id. Section 1.01 defines both as $378,346,244 and $305,865,560, respectively. Id. Working capital is the excess of current assets over current liabilities. Id. at ¶ 12; see also Financial Accounting Standards Board Bulletin (ARB) 43.

Here the Balance Sheet Date Working Capital was a negotiated amount agreed upon by Big Lots and KB Acquisition. Id. at ¶ 12. The agreed upon amount included only those assets and liabilities that the parties agreed would be transferred pursuant to the Stock Purchase Agreement. Id. The Refunds of Taxes were not being sold, were not part of the Balance Sheet Date Working Capital, and were not included in the purchase price paid by KB Acquisition. Id. at ¶ 13.

3

B. **The Balance Sheets And Journal Entries Of The KB Entities, Which Were Prepared By Debtors, Confirm That The Refunds Of Taxes Were Not Sold By Big Lots.**

As required under Section 1.01 of the Stock Purchase Agreement, balance sheets, including a consolidated balance sheet, were prepared by the Debtors that reflected the assets and liabilities of the KB Entities on October 28, 2000. Id. at ¶ 7. Attached as Exhibit A-2 is a true and accurate copy of the October 28, 2000 consolidated balance sheet for the KB Entities that summarizes the assets and liabilities owned by the KB Entities on that date. Id. The October 28, 2000 balance sheet identifies certain estimates of income tax refunds that are part of the Refunds of Taxes on Line Nos. 2258, 2259, 2270, 2271, 2272, 2273, 2274, 2277, 2278, 2280, 2281, 2282, 2283 and 2284. Id. at ¶ 8.

Article VIII of the Stock Purchase Agreement generally addresses tax issues, including the Refunds of Taxes.[3] Id. at ¶ 14. Section 8.03(k) of the Stock Purchase Agreement required KB Acquisition to prepare and provide to Big Lots final financial documents, including a consolidated balance sheet, that reflected the financial condition, including the assets and liabilities contained in the KB Entities, as of the closing date. Id. at ¶ 15. The final closing date consolidated balance sheets provided to Big Lots by KB Acquisition in accordance with Section 8.03(k) are attached as Exhibits A-3 and A-4. Id. The amount of those Refunds of Taxes identified on Line Nos. 2258, 2259, 2270, 2271, 2272, 2273, 2274, 2277, 2278, 2280, 2281, 2282, 2283 and 2284 are blank because they were not sold to KB Acquisition and therefore, were not transferred with the other assets of the KB Entities. Id.

---

[3] Under Section 8.03(f), Big Lots was responsible for all state, foreign and local income taxes for the KB Entities prior to the Closing Date, December 7, 2000. Watts Aff. ¶ 14. Under Section 8.01 Big Lots was responsible for miscellaneous taxes for the KB Entities prior to the Balance Sheet Date, October 28, 2000. Id.

4

A corporation records the acquisition or disposal of assets on its financial records by journal entries. Id. at ¶ 16. Any acquisition or disposal of the Refunds of Taxes had to be recorded on the books of the KB Entities by journal entry. Id. Attached as Exhibit A-5 is a true and accurate copy of the KB Entities' journal entries prepared by the KB Entities. Id. These journal entries that remove the Refunds of Taxes from the balance sheet of the KB Entities because the Refunds of Taxes were transferred to Big Lots prior to the closing of the Stock Purchase Agreement. Id. In fact, the journal entries are labeled as "Deferred Tax Assets as of 10/28-Trans to Seller (CNS)." Id. At the time of the sale Big Lots was known as Consolidated Stores and its stock symbol was "CNS." Id. Thus, these journal entries confirm that Seller (Big Lots) retained ownership of the Refunds of Taxes.

    C.    **The Stock Purchase Agreement Was Subject To An Election Under Internal Revenue Code § 338(h)(10) And No Amount Of The Price Paid By KB Acquisition Was Allocated To The Refunds Of Taxes.**

Finally, pursuant to Section 8.03(a) of the Stock Purchase Agreement, Big Lots and KB Acquisition made a joint election under Section 338(h)(10) of the Internal Revenue Code. Id. at ¶ 18. Any stock sale subject to an election under Section 338(h)(10) is treated as an asset sale for income tax purposes. Id. Pursuant to the Section 338(h)(10) election, the old KB Entities owned by Big Lots are treated as having sold their assets and liabilities on the Closing Date to new KB Entities owned by KB Acquisition. Id. The old KB Entities are then treated as if they have been liquidated on the closing date and all of their income tax attributes, whether liabilities or refunds, flow up to, and are assets or liabilities of, the parent company, Big Lots. Id. The new KB Entities owned by KB Acquisition are treated as having no income tax history. Id.

Pursuant to Section 338(h)(10) (and the Regulations thereunder) and Section 8.03(a) of the Stock Purchase Agreement, Big Lots and KB Acquisition were required to agree

5

120156.01600/40140006v1

on a "Price Allocation." Id. at ¶ 19. The price allocation allocates the purchase price paid by KB Acquisition to all of the assets transferred in the sale. Id. If the Refunds of Taxes had been transferred to KB Acquisition as part of this sale, Big Lots and KB Acquisition were required to allocate a portion of the sales price paid by KB Acquisition to the Refunds of Taxes. Id.

Attached as Exhibits A-6 and A-7 are the correspondence between Big Lots and KB Acquisition pertaining to the Price Allocation required by Section 338(h)(10) and Section 8.03(a) of the Stock Purchase Agreement. Id. at ¶ 20. Also attached as Exhibits A-8 and A-9 are the balance sheets utilized by the parties for the price allocation. No part of the purchase price was allocated to the Refunds of Taxes because they were not an asset of the KB Entities sold by Big Lots to KB Acquisition Corporation. Id. Indeed, a significant portion of the Refunds of Taxes were generated <u>as a result of the loss on this deemed sale</u> and thus it was impossible for them to be sold. Id.

Big Lots is aware that KB Acquisition and/or its related affiliates have received Refunds of Taxes to which Big Lots is entitled. Id. at ¶ 21. In fact, KB Acquisition has admitted as much in its schedules field in this Chapter 11 case. Additional Refunds of Taxes will be received by KB Acquisition and/or its related subsidiaries. Id. Despite demands by Big Lots, KB Acquisition and its related affiliates have refused to turn over the Refunds of Taxes to Big Lots or assure Big Lots that future refunds of taxes will be turned over. Id.

6

120156.01600/40140006v1

III. **ARGUMENT**

A. **Big Lots Owns The Refunds Of Taxes And They Were Not Transferred As Part Of The Stock Purchase Agreement.**

1. **Big Lots Received No Consideration For Refunds Of Taxes From KB Acquisition.**

It is "fundamental that the formation of a contract requires, 'a bargain in which there is a manifestation of mutual assent to the exchange and consideration.'" William Lloyd, Inc. v. Hrab, 1999 WL 1611315 * 2 (Del. Super. 1999) (quoting Acorn Constr., Ltd. v. Kraus, 1986 WL 5872 (Del. Super. 1986) (copies of both opinions are attached hereto as exhibits "D" and "E", respectively). Indeed, without consideration a contract must fail. Heckman v. Nero, 1999 WL 182570* 2 (Del. Ch. 1999) (cites omitted) (copy attached hereto as exhibit "F"). That is especially true as it relates to a stock sale. The value of any company, and thereby its stock price, reflects the assets owned by that company.

No consideration for the Refunds of Taxes was received by Big Lots or paid by KB Acquisition. The Stock Purchase Agreement makes clear that the price hinged upon the agreed upon Balance Sheet Working Capital. Working capital constitutes the net of current assets minus current liabilities. Here the parties negotiated the Balance Sheet Working Capital amount to include only certain assets and liabilities of the KB Entities - the assets and liabilities that were actually sold. Indeed, even a cursory review of the October 28, 2000 balance sheet reveals that actual working capital on that date was in excess of $575,000,000 – an amount that far exceeded the agreed upon Balance Sheet Working Capital of $378,346,244. Why? Because not all of the assets and liabilities contained in the October 28, 2000 balance sheet were sold to KB Acquisition.

7

2. **The Financial Documents Of The KB Entities Prepared By The Parties As Required By The Stock Purchase Agreement Confirm That The Refunds of Taxes Were Not Transferred To KB Acquisition And/Or The KB Entities.**

A balance sheet is "a statement of financial position of any economic unit, disclosing as at a given moment of time, its assets, at cost, depreciated cost, or other indicated value, its liabilities, and the general equity of the owners in conformity with generally accepted accounting principles. See *Black's Law Dictionary*, 130 (5th Ed. 1979).[4] Indeed, "financial statements are a central feature of financial reporting - a principal means of communicating financial information to those outside the entity." See *Original Pronouncements, Accounting Standards*, CON 5 ¶ 5 (Financial Accounting Standards Board 1998). "In external general purpose financial reporting, a financial statement is a formal tabulation of names and amounts of money derived from accounting records that displays either financial position of an entity at a moment in time or one or more kind of changes in financial position of an entity during a period of time." Id.

Pursuant to Section 8.03(k), after the closing, KB Acquisition was <u>required</u> to "cause" each of the KB Entities:

> to close its books and prepare a general trial balance for each legal entity for (i) the period beginning January 30, 2000 and ending on the Closing Date, (ii) the accounting period ending on the Balance Sheet Date, and (iii) the final accounting period ending with the Closing Date.

Section 8.03(k) requires KB Acquisition to provide the financial statements for each of the KB Entities "in hard copy form as well as electronic format" to Big Lots. Id. Thereafter, Big Lots "shall have a right to review the general ledgers for the separate legal entities to insure they are

---

[4] "Consolidated Balance Sheet" is defined as covering "combined operations of affiliated companies, divisions, or subdivisions." See *Black's Law Dictionary*, 130 (5th Ed. 1979)

8

complete and prepared in a manner consistent with prior accounting practices." Id. Section 8.03(k) also sets forth the procedure by which the parties were to correct any "errors and omissions" such that the financial statements associated with the closing can be finalized. Id. Finally, "once [Big Lots] has determined that the general ledgers for the separate legal entities are complete and accurate, [KB Acquisition] shall provide Seller with the general ledgers in an electronic format that can be uploaded into 'Corptax.'" Id. (emphasis supplied). Attached, as Exhibits A-3 and A-4 are true and accurate copies of the final consolidated balance sheets of the KB Entities prepared by KB Acquisition and provided to Big Lots pursuant to the terms and conditions of Section 8.03(k).

The December 7, 2000 Closing Date balance sheet prepared and provided by KB Acquisition clearly shows that the Refunds of Taxes were not assets of the KB Entities on the closing date. Indeed, the portion of the Refunds of Taxes listed as line item nos. 2258, 2259, 2270, 2271, 2272, 2273, 2274, 2277, 2278, 2280, 2281, 2282, 2283 and 2284 are blank. Any asset not present on the closing date balance sheet was not an asset of the companies being transferred pursuant to the Stock Purchase Agreement. Thus, the inescapable conclusion is the Refunds of Taxes were not transferred and ownership was retained by Big Lots.

**B.** **The Fact That None Of The Price Was Allocated To The Refunds Of Taxes By The Parties' Mutual Election Under Internal Revenue Code Section 338(h)(10) Conclusively Establishes That The Refunds Of Taxes Were Not Transferred By Big Lots.**

Internal Revenue Code Section 338(h)(10) is a joint election and treats a stock sale as an asset sale for income tax purposes. See I.R.C. § 338(h)(10); I.R.C. § 338(a); see also former Temp. Treas. Reg. §§1.338-1T(a); 1.338(h)(10)-1T(d)(3).[5] Thereunder, the "target" (the

---

[5] These cited temporary regulations were the Treasury Department Regulations in effect at the time of, and therefore, applicable to, the Stock Purchase Agreement.

9

120156.01600/40140006v1

company being sold) is treated as having sold "its assets at the close of the acquisition date" to a new target company. Id. The old target company is deemed to have liquidated and its tax attributes flow to its parent company. See Treas. Reg. §§1.338(h)(10)-1T(d)(4) and (5); I.R.C. §338. Thereafter, the new target comes into existence with no tax history. Any election under Section 338 requires the parties to allocate a sales price to each asset sold in the transaction. See generally Temp Treas. Reg. §1.338-6T.

As required, after their mutual Section 338(h)(10) election, Big Lots and KB Acquisition negotiated and eventually agreed upon an allocation of the purchase price to the assets sold. If the Refunds of Taxes were part of the sale, a portion of the purchase price was required to be allocated to them. But the agreement reached with regard to the allocation, and the balance sheets prepared by the Debtors reflecting that agreement, make one thing clear -- no amount was allocated to the Refunds of Taxes. Indeed, the balance sheets utilized by the parties for the price allocation did not identify the Refunds of Taxes.[6]

C. **Because The Undisputed Facts And The Law Establish Its Ownership Of The Refunds Of Taxes, Big Lots Is Entitled To Summary Judgment.**

As to the First, Second and Fourth Causes of Action, which seek declaratory relief, an accounting and injunctive relief respectively, Big Lots' undisputed ownership of the Refunds of Taxes is dispositive. The same holds true for the Third Cause of Action which alleges a claim of conversion.[7] Conversion is the wrongful exercise of dominion or control over another's property. See Adcor Indus. v. Crown-Simplimatic, Inc. (In re Crown-Simplimatic,

---

[6] Because the Refunds of Taxes are made in the name of the tax filer, it was impractical if not impossible for Big Lots to cause the taxing authorities to issue the refunds to Big Lots. Watts Aff. ¶ 15. Thus, Section 8.03(d) was inserted in the Stock Purchase Agreement requiring the turnover of the refunds by KB Acquisition to Big Lots.

[7] KB Acquisition makes much of the fact that only it (and not its affiliate companies) is a party to the Stock Purchase Agreement. That is precisely why Big Lots has included a conversion claim against the KB Entities.

10

Inc.), 299 B.R. 319, 326 (Bankr. D. Del. 2003). It is undisputed that the Refunds of Taxes are Big Lots' property, and that despite repeated demands by Big Lots, the Debtors have refused to turn over that property. Thus, as a matter of law, Big Lots is entitled to a liability judgment on its conversion claim for the value of the converted assets, plus additional damages, including attorneys' fees, as Big Lots may prove at a damages hearing.

## IV. CONCLUSION

The absence of consideration, the unambiguous financial documents, and the failure to allocate any part of the purchase price to the Refunds of Taxes lead to one conclusion. The Refunds of Taxes were not part of the sale, were removed from the balance sheet of the KB Entities, and were transferred to Big Lots prior to the closing. Thus, the Refunds of Taxes are the property of Big Lots and should not be included in the Debtors' bankruptcy estates. This Court should so declare and should order that the Refunds of Taxes already received, and that will be received by Debtors, be turned over to Big Lots. In addition, the Debtors should be ordered to provide a full accounting and should be enjoined from asserting any rights to the Refunds of Taxes. Finally, a liability judgment should be entered in favor of Big Lots for Debtors' conversion. All issues with regard to the amount of damages should be reserved for a later date.

Dated: May 20, 2004

BLANK ROME LLP

*Michael DeBaecke*
Michael D. DeBaecke (No. 3186)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19899
(302) 425-6412

- and -

Robert J. Sidman
William D. Kloss, Jr.
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, Ohio 43215
(614) 464-6400
Attorneys for Big Lots Stores, Inc.

120156.01600/40140006v1