**EXHIBIT O**

```
 1
 2                  UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 3
 4   IN RE:                        :    Chapter 11
                                   :
 5   KB Toys, Inc., et al.,        :
                                   :
 6        Debtor(s).               :    Bankruptcy #04-10120 (JBR)
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 7
                           Wilmington, DE
 8                         August 23, 2004
                             11:30 a.m.
 9
                    TRANSCRIPT OF OMNIBUS HEARING
10             BEFORE THE HONORABLE JOEL B. ROSENTHAL
                  UNITED STATES BANKRUPTCY JUDGE
11
     APPEARANCES:
12
     For The Debtor(s):            M. Blake Cleary, Esq.
13                                 Young, Conaway, Stargatt
                                    & Taylor, LLP
14                                 The Brandywine Bldg.
                                   1000 West St.-17th Fl.
15                                 Wilmington, DE 19801

16                                 Mark N. Polebaum, Esq.
                                   Wilmer Cutler Pickering
17                                 Hale & Dorr, LLP
                                   2445 M. street, N.W.
18                                 Washington, DC 20037

19   For The Official Committee:   Susan Balaschak, Esq.
     of Unsecured Creditors        Traub Bonacquist & Fox
20                                 655 Third Ave.-21st Fl.
                                   New York, NY 10017
21
                                   Kimberly D. Newmarch, Esq.
22                                 Richards Layton & Finger
                                   One Rodney Square
23                                 Wilmington, DE 19899

24

25
```

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191



2

|    |                              |                               |
|----|------------------------------|-------------------------------|
| 1  | For Fleet Bank:              | Peter Duhig, Esq.             |
|    |                              | Klett Rooney Lieber           |
| 2  |                              | & Schorling, PC               |
|    |                              | The Brandywine Bldg.          |
| 3  |                              | 1000 West Street-Ste. 1410    |
|    |                              | Wilmington, DE 19801          |
| 4  |                              |                               |
|    | For Big Lots Stores:         | Michael DeBaecke, Esq.        |
| 5  |                              | Blank Rome, LLP               |
|    |                              | Chase Manhattan Centre        |
| 6  |                              | 1201 Market Street-Ste. 800   |
|    |                              | Wilmington, Delaware 19801    |
| 7  |                              |                               |
|    |                              | William Kloss, Jr., Esq.      |
| 8  |                              | Vorys Sater Seymour           |
|    |                              | & Pease, LLP                  |
| 9  |                              | 52 East Gay Street            |
|    |                              | Columbus, OH 43216            |
| 10 |                              |                               |
|    | For Beta Systems, Inc.:      | Regina Iorii, Esq.            |
| 11 |                              | Ashby & Geddes                |
|    |                              | 222 Delaware Ave.-17th Fl.    |
| 12 |                              | Wilmington, Delaware 19899    |
|    |                              |                               |
| 13 | For Airborne Express:        | Suzanne M. Hill, Esq.         |
|    |                              | Potter Anderson & Corroon, LLP|
| 14 |                              | Hercules Plaza                |
|    |                              | 1313 N. Market Street         |
| 15 |                              | Wilmington, DE 19801          |
|    |                              |                               |
| 16 | For Mills:                   | Marc Phillips, Esq.           |
|    |                              | Connolly Bove Lodge & Hutz, LLP|
| 17 |                              | The Nemours Building          |
|    |                              | 1007 North Orange Street      |
| 18 |                              | Wilmington, DE 19801          |
|    |                              |                               |
| 19 | For Inland Southern Mngt.:   | Christina Thompson, Esq.      |
|    | Group, Inland Six Corners:   | Connolly Bove Lodge & Hutz, LLP|
| 20 |                              | The Nemours Building          |
|    |                              | 1007 North Orange Street      |
| 21 |                              | Wilmington, DE 19801          |
| 22 |                              |                               |
| 23 |                              |                               |
| 24 |                              |                               |
| 25 |                              |                               |

3

| | | |
|---|---|---|
| 1 | Audio Operator: | Brandon J. McCarthy |
| 2 | Transcribing Firm: | Writer's Cramp, Inc. |
| 3 | | 6 Norton Rd.<br>Monmouth Jct., NJ 08852<br>732-329-0191 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191

1    MR. KLOSS:  803(k) requires that the financial
2 statements be prepared by the buyer subject to --
3    THE COURT:  But where does it say that the purpose of
4 that is so that everybody in the world knows what was sold and
5 what wasn't?
6    MR. KLOSS:  That's intrinsic in the whole concept of a
7 corporate entity, is if you want to know -- unless you have a
8 line-by-line listing down to the pencil of every asset -- if
9 you want to know what sold as a part of an entities assets and
10 liabilities at any particular time or what's its assets and
11 liabilities are at any particular time, you've got to have a
12 set of financial statements.
13    THE COURT:  Well, then why was the agreement specific
14 in 5.11?
15    MR. KLOSS:  Because of the nature of the assets.  A
16 plane is a tangible assets that can be held -- that is held in
17 a title and can be stuck in a hanger.  Again, by virtue of the
18 nature of these tax -- and these are things that I think are
19 absolutely appropriate as summary judgment level -- on a full
20 blown summary judgment level to address.  That's why this is
21 inappropriate and in fact, we have filed a summary judgment on
22 top of the Motion to Dismiss.  That -- those are factual issues
23 that need to be resolved.  But again, by virtue of this asset,
24 the taxing authority is always going to pay a refund back to
25 the taxpayer.  You can't make -- you can't change that.  And

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191

1  that is true even if the taxpayer doesn't own that asset.  In
2  essence, the taxpayer will hold that refund if it doesn't own,
3  in this case, more or less in trust, for lack of a better
4  description, for its owner.  And that's exactly why we couldn't
5  take -- we couldn't simply say, "These tax refunds are going to
6  be paid to us."  It's not a car, it's not a pencil, it's not an
7  airplane.  An airplane, all's we needed to do was keep it in
8  our hanger and retain the title for it.  It's the nature of the
9  asset.  And that is -- those are the precise issues that -- or
10 can be flushed out on summary judgment.  The 803(k) argument --
11 if the financial statements were not produced in connection --
12 or, strike that -- were not authored or prepared by the Debtors
13 in connection with this transaction -- that'd be a breech of
14 the agreement.  Among other things, it is in fact, an
15 adjustment to the purchase price.  Why would one adjust the
16 purchase price?  Because a company, especially a retail company
17 like the KB entities, its assets or their assets in this case,
18 vary day to day.  On the beginning of a day, it'll have a
19 certain amount of inventory, a certain amount of cash on hand,
20 a certain amount of asset level that may be different, and in
21 fact, assuredly will be different at the end of the day.
22 That's why the working capital adjustment is also important
23 because in the end, the financials are used so the final
24 purchase price can be determined, the final purchase is
25 determined by the exact status of the assets and the

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191

1  they didn't provide the financial statement or they didn't
2  include something, then it wasn't paid for. But it was going
3  to be paid for here, it was just not a secured promissory note
4  or not a secured transaction. How does that switch it from an
5  unsecured promise to an ownership claim? Where in this
6  document does it say that the reason it's not listed in the
7  balance sheet is because it's not been paid for and it's not
8  being transferred? We own it.
9          MR. KLOSS: It does -- if you're looking -- and I've
10 conceded that, Your Honor. If you're looking for language
11 either way that says, this is not -- these tax attributes are
12 not being transferred -- if you're looking for an exact phase
13 along those lines --
14         THE COURT: I'm really looking for something that I
15 can hook onto --
16         MR. KLOSS: Well --
17         THE COURT: -- that says maybe they weren't
18 transferred.
19         MR. KLOSS: Well then --
20         THE COURT: I haven't found it yet.
21         MR. KLOSS: All's you have to hook onto is the
22 financial statements. And we have provided the financial
23 statements and the argument that they are prohibited by parol
24 evidence is just simply wrong. They didn't argue it in their
25 reply brief -- excuse me, the opening brief argued in the reply

1  but we kind of -- we did begin to argument, presuming they were
2  gonna braise that, but the bottom line is, Harmon on contracts
3  probably gives one of the better, simple definitions on parol
4  evidence. Parol evidence prevents antecedent agreements cannot
5  -- antecedent agreements cannot be used to contradict
6  unambiguous integrated documents. Well, this is not parol
7  evidence primarily, using these financial statements. They are
8  not parol evidence for three reasons. First of all, the
9  financials aren't antecedent agreements. They were not
10 prepared before the closing, before the 12/7 document that
11 we're talking about. They were prepared after the closing,
12 they were prepared by the buyer KB and they were prepared
13 pursuant to the current terms and conditions of the agreement.
14 So they're not antecedent agreements. The financials are part
15 and parcel of the Stock Purchase Agreement. Second, there is
16 nothing -- there is not language in the Stock Purchase
17 Agreement that these financials contradict. There are not a
18 contradictory statement. There is not a -- we want to hone in
19 and the KB, or the Debtors here, want to look for that specific
20 language to link on. But there's no specific language to link
21 on either way. There is nothing that these financials
22 contradict. Third, beyond common sense, they want to use the
23 1310 integration clause. Well, the pure -- the plain words,
24 the plain language of 13 guts their claim. The 13 says, "This
25 agreement constitutes the entire agreement between the parties

1  with respect to the subject matter hereof." Then it goes on --
2  this is the important phrase, "No representation, inducement,
3  promise, understanding, condition or warranty not set forth
4  herein or," is the operative word, "in the agreements or
5  documents delivered in connection herewith has been made or
6  relied upon by either party." That's the integration clause.
7  The documents -- the financial documents that we're talking
8  about that give the precise status of the assets and liability
9  on the day of this closing were delivered -- are precisely the
10 documents delivered in connection herewith, referenced in the
11 very integration clause that they want to rely upon. Those
12 documents were required to be prepared and delivered in a
13 certain period of time and approved by the seller. So, to
14 argue that these financial documents are parol evidence, flies
15 in the face of the very integration clause that the Debtors
16 want to use here. That last part, "documents delivered in
17 connection herewith," is what is pure and unambiguous evidence
18 that these should be considered. The bottom line is this, we
19 don't disagree that the Stock Purchase Agreement is an
20 integrated document. The question is, what is the sum total of
21 that fully integrated document? It certainly just isn't the 66
22 page document that the parties have attached. It certainly
23 doesn't include that plus the schedules. What it includes is
24 specifically what it references in the integration agreement.
25 The documents -- the document itself, the agreements and

Writer's Cramp, Inc.
Certified Court Transcribers
732-329-0191

40

1  documents full -- or documents delivered in connection
2  herewith. So certainly these financials are included within
3  the Stock Purchase Agreement. And again, it is beyond dispute
4  because you can look there, you're entitled, there is not
5  listing, we have provided copies of pre-closing documents --
6  excuse me, pre-closing financials that show the asset and the
7  day of the closing financials show no asset for the tax
8  attributes about which we're fighting. Reasonable minds can
9  conclude that those were part of the assets and liabilities
10 contained in the corporate box on the day of the transfer. And
11 if they are not contained in the corporate box, we are entitled
12 to the reasonable presumption that they were retained by the
13 seller. The Motion to Dismiss standard here in the Third
14 Circuit in Delaware is exceptionally high. This shouldn't be
15 dismissed -- the claim shouldn't be dismissed unless it's
16 beyond doubt the Plaintiff can prove no set of facts to support
17 claim -- to support the claim which would entitle it to relief.
18 There certainly -- and also that the Complaint does not provide
19 adequate notice to the Defendant to frame an answer. Certainly
20 the complaint here makes that criteria, reaches that standard.
21 If Big Lots shows that there was not transfer of the assets --
22 in other words, that those assets were not part of the
23 companies whose stock was sold on December 7, 2000, then it is
24 undisputed that its entitled to the relief in the Complaint.
25 It was -- those were part of the assets of the companies that

1 were owned by Big Lots on December 6th, 2000, they were not
2 transferred so the reasonable presumption is they remained Big
3 Lots property. This is a case that should not be resolved on a
4 Motion to Dismiss. There are a variety of factual issues that
5 are -- exist here. There are a variety of facts and
6 circumstances that need to be flushed out on discovery and this
7 case should be heldover through discovery and through the
8 Summary Judgment Motion to stage so we can do additional
9 discovery to see -- to have testimony to see precisely what
10 KB's position is in this matter. So, on that -- in that
11 regard, the Motion to Dismiss here should be denied, Judge.
12     THE COURT: Thank you, Mr. Kloss.
13     MR. KLOSS: Thank you.
14     THE COURT: Briefly, Mr. Polebaum.
15     MR. POLEBAUM: Your Honor, I think there are only two
16 issues that I'd like to address. The first is the sales price
17 adjustment and I think the Court said it, but I just want to
18 make sure that I heard the Court correctly. There is a sales
19 price adjustment mechanism set forth in Stock Purchase
20 Agreements and in Section 2.04. It is KB's position that
21 Section 8.03(d) is a specific provision of the agreement
22 dealing with future tax refunds as in one received by KB US and
23 its subsidiaries. And it imposes an obligation to pay the
24 amount of those refunds over to Big Lots. And therefore, it
25 would end up having to pay twice for that same refund if it was

*Writer's Cramp, Inc.*
*Certified Court Transcribers*
732-329-0191