IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

*In re:*

KB TOYS, INC., *et al.*,

                                        Debtors.

BIG LOTS STORES, INC.,

                                        Appellant

        v.

KB ACQUISITION CORPORATION, *et al.*,

                                        Appellees.

Bankruptcy Case No. 04-10120 (WS)
Bankruptcy Adv. Proc. 04-53134 (WS)

Civil Action No. 04-1310 (KAJ)

## ANSWERING BRIEF OF APPELLEES
## KB ACQUISITION CORPORATION, ET AL.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Joel A. Waite (No. 2925)
M. Blake Cleary (No. 3614)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Tel: (302) 571-6600
Fax: (302) 571-1253

        – and –

WILMER CUTLER PICKERING
 HALE AND DORR LLP
Mark N. Polebaum (BBO #402060)
Mitchel Appelbaum (BBO# 558579)
Kristin V. Collins (BBO #650420)
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000

Counsel for Appellees

Dated: July 1, 2005

WP3:1126963.2

62865.1001

## TABLE OF CONTENTS

I.    STATEMENT OF NATURE AND STAGE OF PROCEEDING .......................................1

II.   SUMMARY OF ARGUMENT ........................................................................................2

III.  STATEMENT OF FACTS .............................................................................................2

IV.   ARGUMENT.................................................................................................................5

      A.    In Granting the Debtors' Motion to Dismiss, the Bankruptcy
            Court Properly Considered the Amended Complaint and
            Written Instrument upon which Big Lots' Claims are Based .................................6

      B.    Big Lots Failed to Allege Facts Sufficient to State a Claim of
            Ownership in the Qualified Tax Refunds .................................................................8

      C.    Extraneous Documents Urged Upon this Court by Big Lots
            are Irrelevant and Not Properly Part of the Record on Appeal............................12

V.    CONCLUSION............................................................................................................17

## TABLE OF AUTHORITIES

Federal Cases

*Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999) ............ 5

*Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 123-33 (S.D.N.Y. 1994) ............. 6, 11

*Doug Grant, Inc. v. Greater Bay Casino Corp.*, 232 F.3d 173 (3d Cir. 2000) ............................... 5

*In re Chateaugay Corp.*, 64 B.R. 990 (S.D.N.Y. 1986) ................................................................ 13

*In re Rockefeller Center Props., Inc. Secs. Litig.*, 311 F.3d 198 (3d Cir. 2002) ................ 5, 6, 8, 9

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004) ........................................................................ 5

*Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982) .......................................................................... 3

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) ........... 6

*Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98 (3d Cir. 1982) ................................ 5

State Cases

*City Investing Co. Liquidating Trust v. Continental Casualty Co.*,
    624 A.2d 1191 (Del. 1993) .................................................................................................. 11

*Eagle Indus., Inc. v. DeVilBiss Health Care, Inc.*, 702 A.2d 1228 (Del. 1997) ........................... 12

*Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*,
    616 A.2d 1192 (Del. 1992) .................................................................................................. 12

*True North Communications, Inc. v. Publicis S.A.*, 711 A.2d 34 (Del. Ch. 1998) ...................... 11

Rules

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 13

Fed. R. Bankr. P. 8006 ............................................................................................................ 13, 14

Other Authorities

5A C. Wright & A.R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004) ................. 5, 6

10A C. Wright & A.R. Miller, Federal Practice and Procedure § 2713 (3d ed. 1998
& Supp. 2005) .......................................................................................................................... 13

## I.    STATEMENT OF NATURE AND STAGE OF PROCEEDING

This case is an appeal from an order (Dismissal Order, App. Ex. J) of the United

States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court")

dismissing an adversary proceeding brought by Big Lots Stores, Inc. ("Big Lots" or

"Appellant"), the former owner of the KB Toys business, against KB Acquisition

Corporation ("KBAC") and its affiliates (collectively, the "Appellees" or "Debtors") on

the grounds that Big Lots' amended complaint failed "to allege facts sufficient to

establish its claim of ownership over certain tax refunds that have been in, or may come

into, the possession, custody and control of KBAC or its affiliates." (Mem. Op. at 1, App.

Ex. K) (footnote omitted).  The Bankruptcy Court correctly dismissed the adversary

proceeding as Big Lots' claims are entirely unfounded in fact and law.  Big Lots failed to

adequately plead any claim of an ownership interest in the Qualified Tax Refunds

(defined below) and can prove no set of facts that would entitle it to the relief requested

in its amended complaint.[1]  In reality, this appeal is one of many attempts by Big Lots to

enhance its negotiating leverage over other creditors in the Debtors' chapter 11 cases.

Big Lots is simply attempting to convert an unmistakable, prepetition unsecured claim

against KBAC into an ownership interest in certain assets of indirect subsidiaries of

KBAC.  The adversary proceeding was properly dismissed and the Bankruptcy Court's

decision should be affirmed.

---

[1] Throughout its Opening Brief, Big Lots repeatedly claims that facts and evidence are "unrefuted,"
"undisputed," or "uncontroverted" and therefore prove Big Lots' position.  However, whether such facts
are disputed is completely irrelevant because, as a matter of law, the contract on which Big Lots bases its
claims is clear and unambiguous that no Qualified Tax Returns were transferred to Big Lots.  Big Lots
cannot escape this fact despite the number of conclusory statements or alleged "facts" that it asserts to the
contrary.  The Debtors further note that Big Lots styled the statement of facts section of its Opening Brief
as "Statement of Undisputed Facts."  The Debtors object to Big Lots' inaccurate characterization as the
section is more appropriately described as a summary of argument.

## II.  SUMMARY OF ARGUMENT

The Bankruptcy Court correctly dismissed the adversary proceeding because Big Lots failed to adequately plead any claim of an ownership interest in the Qualified Tax Refunds. Big Lots' claim to ownership is based on the language of the Stock Purchase Agreement between KBAC and Big Lots (the "Agreement"), dated as of December 7, 2000, pursuant to which the Debtors purchased the KB Toys business from Big Lots. The Agreement is clear and unambiguous. No Qualified Tax Refunds were transferred to Big Lots. Rather, pursuant to the Agreement, KBAC agreed to make certain future payments to Big Lots measured by the amount of Qualified Tax Refunds, if any, received by KBAC and its affiliates. Such a promise to pay, like KBAC's promise to pay any other creditor, is a prepetition, unsecured obligation that cannot be twisted or manipulated into a transfer of ownership of an asset as Big Lots contends. Interpretation of the Agreement is a matter of law and the Bankruptcy Court correctly interpreted the Agreement. Big Lots, therefore, can prove no set of facts consistent with the allegations pleaded in the amended complaint that would entitle it to the relief it requests.

## III.  STATEMENT OF FACTS

KBAC was organized under the laws of the state of Delaware on November 28, 2000 to acquire the KB Toys business through the purchase of 100% of the stock of Havens Corners Corporation ("HCC") pursuant to the Agreement. KBAC and Big Lots are the only parties to the Agreement. None of KBAC's affiliates are party to the Agreement. (Feldman Aff. ¶ 2, App. Ex. B).[2]

---

[2] Appellees refer to the Affidavit of Mr. Robert J. Feldman filed with the Bankruptcy Court on April 21, 2004 in support of their Opposition to Plaintiff's Motion for Preliminary Injunction.

Section 8.03(d) of the Agreement provides that KBAC "shall promptly pay or shall cause prompt payment to be made to [Big Lots] of all refunds of Taxes and interest thereon, as well as all Tax benefits arising from" certain refunds of taxes received by KBAC or any of its affiliates on account of income taxes paid by Big Lots for any tax period ending on or before December 7, 2000 (the "Qualified Tax Refunds"). (Feldman Aff. at Ex. A, § 8.03(d), App. Ex. B). The unequivocal, plain meaning of the language of Section 8.03(d) is that KBAC has a payment obligation to Big Lots that is measured by the amount of Qualified Tax Refunds, if any, that are received by either KBAC or its affiliates. Nowhere in the Agreement does it say that KBAC or its affiliates transfer ownership of the Qualified Tax Refunds to Big Lots. Id.

On January 14, 2004 (the "Petition Date"), the Debtors filed petitions for relief under Title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), in the Bankruptcy Court. On March 26, 2004, Big Lots commenced an adversary proceeding against KBAC in the Bankruptcy Court asserting an ownership interest in Qualified Tax Refunds purportedly in the possession of KBAC. Big Lots subsequently filed an amended complaint adding all of the Debtors as defendants in the adversary proceeding (the "Amended Complaint"). (Am. Compl., App. Ex. A).

On April 26, 2004, KBAC and its affiliates filed a motion to dismiss the adversary proceeding (the "Motion to Dismiss") on the grounds that Big Lots had failed to adequately plead any ownership interest in the Qualified Tax Refunds. (Mot. Dismiss, App. Ex. C; Mem. In Support, App. Ex. D).

While the Motion to Dismiss was pending and before discovery had commenced in accordance with the Federal Rules of Civil Procedure and the Local Rules of

3

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware,[3] Big Lots filed a Motion for Summary Judgment. On May 20, 2004, Big Lots also filed its answering brief to the Motion to Dismiss. (Answer Br., App. Ex. E).

On May 28, 2004, Big Lots and the Debtors expressly agreed by stipulation, which was approved by order of the Bankruptcy Court dated June 3, 2004 (Stip. Order, App. Ex. H), that in the event that the Bankruptcy Court denied the Motion to Dismiss, the time within which the Debtors could respond to Big Lots' motion for summary judgment was extended for twenty-one days after such a ruling.

On June 1, 2004, the Debtors filed a reply brief in support of the Motion to Dismiss (Reply Br., App. Ex. F) and a Notice of Completion of Briefing (Br. Notice, App. Ex. G). The Notice of Completion of Briefing did not designate Big Lots' summary judgment documents as pleadings relevant to the Bankruptcy Court's consideration of the Motion to Dismiss. Big Lots did not object to the Notice of Completion of Briefing.

On August 23, 2004, the Bankruptcy Court held a hearing on the Motion to Dismiss (Hr'g Tr., App. Ex. I), and on August 25, 2004, the Bankruptcy Court entered an order (the "Dismissal Order") and issued its decision granting the Motion to Dismiss, thereby mooting Big Lots' Motion for Summary Judgment and eliminating the need for the Debtors to respond. (Dismissal Order, App. Ex. J; Mem. Op., App. Ex. K).

---

[3] Big Lots complains that is has not been permitted to conduct discovery in this matter. What Big Lots fails to acknowledge is that by invoking the jurisdiction of the courts, Big Lots is bound by the Federal Rules of Civil Procedure and applicable local rules. These rules proscribe the immediate commencement of discovery following the filing of a complaint, as the Bankruptcy Court made clear when it denied Big Lots' motion to compel discovery and quashed all outstanding notices of deposition served prematurely in violation of the Federal Rules of Civil Procedure. (Appellant's Br. at 7-8); see also Notaro v. Koch, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) (rules regarding timing and sequence of discovery are specifically designed to balance the needs of the parties, "maintain the fairness of civil litigation" and protect defendants "from unwarily incriminating themselves before they have a chance to review the facts of the case").

4

On September 2, 2004, Big Lots filed the instant appeal with respect to the Dismissal Order. (Appeal Notice, App. Ex. L).

On September 13, 2004, Big Lots filed its Designation of Items to be Included in the Record on Appeal and Statement of Issues on Appeal from the Bankruptcy Court's Memorandum Decision and Order [D.I. 2]. On September 23, 2004, KBAC and its affiliates filed their Counterdesignation of Items to be Included in the Record on Appeal and Statement of Issues to be Presented on Appeal [D.I. 4]. KBAC and its affiliates also moved to strike certain items designated by Big Lots to be included in the record on appeal, namely Big Lots' Motion for Summary Judgment and brief in support thereof (including the Watts Affidavit), because such items are not properly part of the record on appeal [D.I. 3]. The Bankruptcy Court did not rule on the motion to strike, which was transferred to the United States District Court for the District of Delaware (the "District Court") with the record on appeal.[4]

## IV.    **ARGUMENT**

In reviewing a final order on appeal, a district court must apply a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to the bankruptcy court's legal conclusions. See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999); see also Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102 (3d Cir. 1982).

---

[4] The Debtors' motion to strike was transferred by the Bankruptcy Court to this Court to be heard in connection with the appeal. The Debtors have not and do not waive or abandon any arguments set forth in the motion to strike.

A.    **In Granting the Debtors' Motion to Dismiss, the Bankruptcy Court Properly Considered the Amended Complaint and Written Instrument upon which Big Lots' Claims are Based**

In granting the Debtors' Motion to Dismiss, the Bankruptcy Court properly concluded that Big Lots could prove no set of facts consistent with the allegations pleaded in the Amended Complaint that would entitle it to relief. See Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004). In deciding a Rule 12(b)(6) motion, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences from those facts in the light most favorable to the non-moving party. Id. In making its determination, however, the court need not accept as true bald assertions, unsupported conclusions or unwarranted inferences asserted in the complaint. In re Rockefeller Center Props., Inc. Secs. Litig., 311 F.3d 198, 216 (3d Cir. 2002); Doug Grant, Inc. v. Greater Bay Casino Corp., 232 F.3d 173, 184 (3d Cir. 2000).

In addition to the facts set forth in the complaint, courts generally consider exhibits attached to the complaint and matters of public record. 5A C. Wright & A.R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004). In particular, the court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). The parties agreed that the Bankruptcy Court could properly consider the Agreement in deciding the Motion to Dismiss. In such an instance, it is the content of the document that controls and not the allegations of the Amended Complaint. See Barnum v. Millbrook Care Ltd. P'ship, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994) ("[I]f the

allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint.").

The substance of the allegations asserted in the Amended Complaint and the text of the Agreement confirms the Bankruptcy Court's conclusion that Big Lots simply cannot establish an ownership interest in the Qualified Tax Refunds. Big Lots incorrectly argues that the Bankruptcy Court should have accepted as true certain "undisputed" facts alleged in paragraph 81 of the Amended Complaint and should have made the completely unreasonable inference from such facts that Big Lots has an ownership interest in the Qualified Tax Refunds. First, Big Lots mistakenly characterizes such facts as "undisputed." As evidenced by the instant appeal, the Debtors dispute Big Lots' baseless assertion that the Qualified Tax Refunds "remained the property of Big Lots." (Am. Compl. ¶81, App. Ex. A). Second, Big Lots ignores that the Bankruptcy Court was not required to accept as true its bald assertions, unsupported conclusions and unwarranted inferences. See In re Rockefeller Center, 311 F.3d at 216. Citing paragraph 81 of the Amended Complaint, the Bankruptcy Court found that "[t]here are no facts or reasonable inferences to support a finding that Big Lots' allegation of an ownership interest in the tax refunds is correct." (Mem. Op. at 4, App. Ex. K). The Bankruptcy Court went on to conclude that "the facts supported exactly the opposite." Id. (emphasis added).

Thus, even if Big Lots were granted leave to further modify its Amended Complaint, relief which it requests for the first time from this Court, to add additional bald assertions and unwarranted inferences, such allegations would not change the clear

7

and unambiguous terms of the Agreement that the Qualified Tax Refunds were not transferred to Big Lots. The Bankruptcy Court properly concluded that the Amended Complaint fails to set forth any legally cognizable claims for relief.

**B.      Big Lots Failed to Allege Facts Sufficient to State a Claim of Ownership in the Qualified Tax Refunds**

Big Lots' Amended Complaint fails to allege facts sufficient to establish its claim of ownership in the Qualified Tax Refunds. Therefore, the Bankruptcy Court could not make any declaration of ownership, issue any order compelling KBAC or its affiliates to account for and pay over the Qualified Tax Refunds, make a finding of conversion, or grant injunctive relief. As evidence of its alleged ownership interest in the Qualified Tax Refunds, Big Lots relies on Section 8.03(d) and Section 8.03(b) of the Agreement. (Am. Compl. ¶ 81, App. Ex. A). Neither Section 8.03(d) nor Section 8.03(b) of the Agreement can be construed to transfer ownership of Qualified Tax Refunds to Big Lots.

Under the express terms of Section 8.03(d), KBAC's obligation is a simple promise to pay: "Buyer shall promptly pay or shall cause prompt payment to be made." (Feldman Aff. at Ex. A, § 8.03(d), App. Ex. B). A promise to pay is not susceptible of being interpreted to transfer ownership of the asset on account of which payment has been promised. Since the vast bulk of all general unsecured claims in any bankruptcy proceeding arise from the failure of the debtor to perform a "promise to pay" for goods, rents, services, or the like, to rule otherwise would convert virtually all unsecured claims in the Debtors' chapter 11 cases into secured claims. There is not a single word in Section 8.03(d) or the entire Agreement that supports Big Lots' claim that it owns the Qualified Tax Refunds. See also Hr'g Tr. at 28, App. Ex. I ("Well, I'm gonna concede, if you were looking for a sentence that says that [Big Lots retained ownership of the

8

Qualified Tax Refunds] in the Stock Purchase Agreement, you're not gonna find it.")
(representation of Big Lots' counsel).

Moreover, the Agreement is a stock purchase agreement by which KBAC
purchased the KB Toys business from Big Lots through the purchase of 100% of the
stock of HCC. As the Bankruptcy Court correctly noted, "it is a general principal of
corporate law that all assets and liabilities are transferred with the stock sale." (Mem.
Op. at 4, App. Ex. K). Big Lots tries to confuse the Court with reference to changes in
"tax attributes," but whatever tax attributes or other assets HCC or its subsidiaries had as
of the closing date continued to be the tax attributes or the assets of such entities unless
there is something in the agreement that transferred to Big Lots such attributes or assets.
This is the natural and intended consequence of any stock purchase agreement.
Section 8.03(d) simply fails to serve as language of transfer. In fact, and as the
Bankruptcy Court concluded, the clear implication of Section 8.03(d) is the exact
opposite of Big Lots' assertion. The parties to the Agreement understood that KBAC and
its subsidiaries would continue to own the Qualified Tax Refunds and that if and when a
Qualified Tax Refund was received, KBAC would pay such amount to Big Lots.

> The language of section 8.03 supports a finding that KBAC promised to
> pay Big Lots when the tax refunds were received, it does not support a
> finding that KBAC promised to pay because Big Lots was an owner of
> them. It is an unreasonable inference that since the tax refunds were not
> included on the balance sheets they were not part of the stock sale to
> KBAC, particularly considering that the parties knew how to exclude
> assets from the stock sale as evidenced by section 5.11 of the stock
> purchase agreement regarding the transfer of LLC Interests . . . . [M]aking
> the inferences as suggested by Big Lots is unreasonable.

Id.

The fact that the Qualified Tax Refunds were not transferred to Big Lots is
precisely why, as Big Lots admits, it was "impossible for Big Lots to cause the taxing

9

authorities to remit them directly to Big Lots," because Big Lots had no ownership rights
to enforce against the taxing authorities. (Appellant's Br. at 15). Instead, Big Lots
negotiated for and accepted the unsecured promise of KBAC to make payment when
due.[5] Despite conceding that "KBAC's obligations under Section 8.03(d) of the
Agreement . . . amount to a mere 'promise to pay,'" Big Lots urges this Court, without
citation to any supporting authority, to make the absurd and illogical leap that KBAC's
promise to pay over Qualified Tax Refunds that come into its possession, custody or
control to Big Lots is evidence that Big Lots actually owns that same property. Id.

　　　　Section 8.03(b) is of no greater assistance to Big Lots. In Section 8.03(b), KBAC
"covenants" that it will not and will not permit its subsidiaries to use their tax attributes
for pre-closing periods in a way that would result in a tax liability to Big Lots. This is a
simple promise to refrain from taking specified actions. It has no language of transfer
that supports Big Lots' claim. Indeed, the second half of Section 8.03(b), which is not
referenced by Big Lots, is a mirror image of the language referred to by Big Lots by
which Big Lots agrees not to take any action with respect to the tax attributes of the
company and its subsidiaries that would result in a tax liability to KBAC. These mutual
and reciprocal covenants leave the tax attributes exactly where they were pre-closing and
limit the manner by which KBAC and Big Lots may, through their respective tax returns,
affect the tax liability of the other.

　　　　Moreover, the sophisticated parties to the Agreement knew precisely how to
exclude the transfer of certain property when they intended such an exclusion. For

---

[5] Big Lots' claims under all circumstances cannot be maintained against any party other than KBAC,
regardless of the interpretation of the Agreement, because only KBAC is a party to the Agreement.

example, in Section 5.11 of the Agreement, Big Lots expressly excluded the transfer of two of its jet aircraft.

> Immediately prior to the Closing, Seller shall cause Pheasant Kay-Bee Toy, Inc., a Subsidiary of the Company, to transfer its limited liability company membership interests in Sonoran LLC, a Delaware limited liability company ("Sonoran"), and Sahara LLC, a Delaware limited liability company ("Sahara") to Seller. Seller represents and warrants that neither Sonoran or Sahara has any assets or liabilities other than related to two jet aircraft that are used by Seller.

(Feldman Aff. at Ex. A, § 5.11, App. Ex. B). A simple comparison of Section 2.01, by way of further example, to Sections 8.03(d) and 8.03(b) demonstrates the difference between language of transfer versus an agreement to pay or to refrain from taking action. Section 2.01 provides that seller agrees to "sell" and buyer agrees to "purchase" the shares of HCC. The parties intended to transfer ownership of an asset and used clear language of purchase and sale. In Sections 8.03(b) and 8.03(d) the parties agreed that they "will not take any action" and "pay or cause to be paid," clearly not words of transfer.

Finally, KBAC is not the taxpayer that filed any of the tax returns that have given rise to the Qualified Tax Refunds or for which Qualified Tax Refund claims are pending. KBAC, as the only Debtor party to the Agreement, could not possibly have transferred ownership rights to receive payments that it did not own. KBAC, not any of its affiliates, merely agreed to pay to Big Lots an amount equal to the amount of Qualified Tax Refunds if and when they were received. Big Lots' sole claim, therefore, is against KBAC, arises out of a prepetition contract and is no different than the claims of any other general unsecured creditor seeking payment from KBAC in its chapter 11 case. Like any similarly situated creditor, Big Lots' remedy for KBAC's alleged failure to pay under the terms of the Agreement is not a declaration of ownership or order compelling KBAC or

11

its affiliates to account for and pay over the Qualified Tax Refunds, but rather the right to

assert a general unsecured claim against KBAC's bankruptcy estate.  The Bankruptcy

Court, therefore, properly dismissed the Amended Complaint.

### C.    Extraneous Documents Urged Upon this Court by Big Lots are Irrelevant and Not Properly Part of the Record on Appeal

The closing date balance sheets of KBAC and its subsidiaries and other

documents urged upon this Court by Big Lots in its brief are not relevant to an

interpretation of the Agreement, do not establish that the Qualified Tax Refunds were

transferred to Big Lots, and are not properly part of the record on appeal.

In a desperate effort to avoid dismissal of its suit, Big Lots unsuccessfully urged

the Bankruptcy Court and now urges this Court to consider various documents it filed in

connection with its Motion for Summary Judgment, including balance sheets, journal

entries, and now the affidavit of a single individual, which are neither referenced in the

Amended Complaint nor part of the Agreement, in order to save its claims that are

entirely unfounded in fact and law.[6]  By its own pleading, Big Lots has neither alleged

nor claimed that the Agreement is unclear or ambiguous.  (Am. Compl. ¶ 81, App. Ex.

A).  In such an instance, it is the content of the Agreement that controls and not the

allegations of the complaint.  See Barnum v. Millbrook Care Ltd. P'ship, 850 F. Supp.

1227, 1232-33 (S.D.N.Y. 1994).  Despite the clear and unambiguous nature of the

---

[6] In its Opening Brief, Big Lots cites out of context one sentence spoken by the Bankruptcy Court Judge during the hearing to consider Big Lots' motion for a preliminary injunction (which motion was subsequently denied), not during the hearing to consider the Motion to Dismiss, to stand for the proposition that the Bankruptcy Court had concluded that Big Lots had presented "some evidence that buttresses" its argument. (Appellant's Br. at 8-9).  The Judge's comment were merely an acknowledgment, however, that Big Lots was attempting to rely on more than the Agreement to support its argument, a document that the Judge had expressed skepticism would support its case. (Appellant's Br. at 8-9, Appellant's App. Ex. H at 48).  The Debtors further note that the transcript of the preliminary injunction hearing was not designated as an item to be included in the record on appeal, was not considered by the Bankruptcy Court in rendering its decision on the Motion to Dismiss, and should therefore not be considered by this Court.

Agreement, however, Big Lots seeks to contradict the explicit terms of the Agreement with parol evidence.

Under Delaware law, if a writing is plain and clear on its face "the writing itself is the sole source for gaining an understanding of intent" and any parol evidence must be excluded. City Investing Co. Liquidating Trust v. Continental Casualty Co., 624 A.2d 1191, 1198 (Del. 1993) (citing Citadel Holding Corp. v. Roven, 603 A.2d 818, 822 (Del. Supr. 1992)). Where no ambiguity exists, a court may not resort to extrinsic evidence as an aid to interpretation, and "the Court must apply the meaning that would be ascribed to the language by a reasonable third party." True North Communications, Inc. v. Publicis S.A., 711 A.2d 34, 38 (Del. Ch. 1998). Moreover, an agreement is not rendered ambiguous "simply because the parties in litigation differ concerning its meaning" or proper construction. City Investing Co., 624 A.2d at 1198. A contract may only be considered ambiguous if it is "fairly susceptible of different interpretations or may have two or more different meanings." Eagle Indus., Inc. v. DeVilBiss Health Care, Inc., 702 A.2d 1228, 1232 (Del. 1997); see also Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1196 (Del. 1992).

Because the Agreement is not reasonably or fairly susceptible to different interpretations or two or more different meanings, the plain meaning of the Agreement can be determined from the face of the document itself. Moreover, Section 13.10 of the Agreement explicitly states that the document "constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior written agreements, understandings and negotiations, both written and oral, between the parties with respect to the subject matter of this Agreement . . . ." Thus, even if this Court were

13

to assume that such documents were admissible, it is unreasonable to infer that since the

Qualified Tax Refunds were not included on the balance sheets, were not included on a

schedule of general ledger entries, or do not comport with the memory of a single

individual that "they were not part of the stock sale to KBAC." (Mem. Op. at 4, App.

Ex. K).

Moreover, neither Section 8.03(b) nor 8.03(d), the sections upon which Big Lots

relies for its claim of ownership, refer to any of these documents for any purpose,

including for the purpose of transferring assets owned by HCC and its subsidiaries to Big

Lots. The balance sheets, for instance, are used in the Agreement primarily to calculate

the purchase price, not to determine ownership of the Qualified Tax Refunds. The

presence or absence of Qualified Tax Refunds on the balance sheets may be nothing more

than evidence that the facts or circumstances which might give rise to a right to receive a

tax refund had not yet occurred, making it inappropriate to reflect it on a balance sheet. [7]

As the Bankruptcy Court concluded, it is unreasonable to infer that because the Qualified

Tax Refunds were not on the balance sheets, they were not part of the stock sale to

KBAC. (Mem. Op. at 4, App. Ex. K).

Big Lots' insistence that this Court consider its Motion for Summary Judgment

and related documents is also procedurally inappropriate and such documents are not

properly part of the record on appeal. When a court decides to dismiss an action pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure, any pending motion for

---

[7] Big Lots argued at length in the Bankruptcy Court that the balance sheets referenced in the Agreement prove that the Qualified Tax Refunds were not transferred to KBAC because the refunds do not appear as assets on the balance sheet. Without waiving any objections to the authenticity or admissibility of the documents or Big Lots' arguments, the Debtors note that it is a fundamental principle of accounting that potential assets whose realization and value are uncertain, such as tax refunds, are not recorded on the balance sheet in order to avoid the improper recognition of revenue prior to its realization. See generally FASB, Statement No. 5, Accounting for Contingencies; FASB, Statement No. 109, Accounting for Income Taxes. Thus, the uncertain future tax refunds referenced in the Agreement were properly excluded from the balance sheets under generally accepted accounting principles.

summary judgment against the claimant may be treated as moot and therefore not decided. <u>See</u> 10A C. Wright & A.R. Miller, Federal Practice and Procedure § 2713 (3d ed. 1998 & Supp. 2005). Big Lots' summary judgment pleadings are simply not properly part of the record on appeal. Bankruptcy Rule 8006 establishes the procedure for designating items to be included in the record on appeal. Courts have interpreted Rule 8006 "to mean that 'the record on appeal should contain all documents and evidence bearing on the proceedings below and considered by the bankruptcy judge in reaching his decision.'" <u>In re Chateaugay Corp.</u>, 64 B.R. 990, 995 (S.D.N.Y. 1986) (quoting <u>In re W.T. Grant Co.</u>, 432 F. Supp. 105, 106 (S.D.N.Y.), <u>aff'd</u> 559 F.2d 1206 (2d Cir. 1977)). "Items not before the Bankruptcy Court and not considered by it in rendering its decision may not be included in the record." <u>In re Nashaminy Office Bldg. Assocs.</u>, 62 B.R. at 802; <u>see</u> <u>also</u> <u>Zer-Ilan v. Frankford (In re CPDC, Inc.)</u>, 337 F.3d 436, 443 (5th Cir. 2003) (finding Rule 8006 does not permit items to be added to record on appeal to district court that were not part of record considered by bankruptcy court).

Big Lots' summary judgment pleadings are not properly part of the record on appeal because they are not relevant, are extraneous, and were not designated in the Notice of Completion of Briefing as pleadings relevant to consideration of the Motion to Dismiss. Big Lots did not object to the Notice of Completion of Briefing nor designate its summary judgment documents as pleadings relevant to the Bankruptcy Court's consideration of the Motion to Dismiss. Now, Big Lots seeks to have this Court consider such pleadings, which were not in the record before the Bankruptcy Court. Moreover, the parties expressly agreed by stipulation that the time within which the Debtors could respond to the Motion for Summary Judgment was extended for twenty-one days after

15

the Bankruptcy Court ruled on the Motion to Dismiss and then, only if the Motion to Dismiss was denied.  By granting the Motion to Dismiss, the Motion for Summary Judgment was mooted, eliminating the need for the Debtors to respond thereto.  For these reasons, such documents were not considered by the Bankruptcy Court and should not now be considered by this Court.

WP3:1126963.2                                                                                                                        62865.1001

## V. **CONCLUSION**

For the foregoing reasons, Appellees maintain that the Bankruptcy Court properly

dismissed the adversary proceeding. Even accepting the allegations of fact in the

Amended Complaint as true and drawing every <u>reasonable</u> inference in favor of Big Lots,

Big Lots cannot state a claim upon which relief can be granted.

Dated: July 1, 2005
     Wilmington, Delaware

          YOUNG CONAWAY STARGATT & TAYLOR, LLP

          Joel A. Waite (No. 2925)
          M. Blake Cleary (No. 3614)
          Matthew B. Lunn (No. 4911)
          The Brandywine Building
          1000 West Street, 17th Floor
          P.O. Box 391
          Wilmington, Delaware 19899-0391
          Tel: (302) 571-6600
          Fax: (302) 571-1253

           - and –

          WILMER CUTLER PICKERING
          HALE AND DORR LLP
          Mark N. Polebaum (BBO #402060)
          Mitchel Appelbaum (BBO #558579)
          Kristin V. Collins (BBO #650420)
          60 State Street
          Boston, MA 02109
          Tel: (617) 526-6000
          Fax: (617) 526-5000

          Counsel for Appellees

WP3:1126963.2

62865.1001

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2005, I electronically filed a true and correct copy of the Answering Brief of Appellees KB Acquisition Corporation, et al. with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

**AND BY HAND DELIVERY**
Michael D. DeBaecke, Esquire
Blank Rome Comisky & McCauley, LLP
1201 Market Street,  Suite 800
1201 Market Street
Wilmington, DE 19801

I further certify that on July 1, 2005, I served the Answering Brief of Appellees KB Acquisition Corporation, et al. upon the following non-registered participants in the manner indicated below:


By First Class Mail
VORYS, SATER, SEYMOUR AND PEASE LLP
Robert J. Sidman
William D. Kloss, Jr.
52 East Gay Street
Columbus, OH 43215


YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Joel A. Waite (No. 2925)
M. Blake Cleary (No. 3614)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
Tel:  (302) 571-6600
Fax:  (302) 571-1253
jwaite@ycst.com
mbcleary@ycst.com