**EXHIBIT E**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| KB TOYS, INC., *et al.*, | : | Case No. 04-10120 (JBR) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| ———————————————— | : | |
| | : | |
| BIG LOTS STORES, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| Vs. | : | Adversary No. 04-53134 (JBR) |
| | : | |
| KB ACQUISITION CORPORATION, *et al.*, | : | Re: Adversary Docket No. 24 |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

Dated: May 20, 2004

BLANK ROME LLP
Michael D. DeBaecke (No. 3186)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19899
(302) 425-6412

and

Robert J. Sidman
William D. Kloss, Jr.
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, Ohio 43215
(614) 464-6400
Attorneys for Big Lots Stores, Inc.

120156.01600/40139999v1

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................i

TABLE OF AUTHORITIES .........................................................................................................ii

INTRODUCTION ..........................................................................................................................1

II.     STANDARD APPLICABLE TO DEFENDANTS' MOTION TO DISMISS....................1

III.    FACTS ..............................................................................................................................3

IV.     ARGUMENT .....................................................................................................................5

        A.     If Accepted As True, The Allegations In The Amended Complaint Which
               Incorporate The Terms And Conditions Of The Stock Purchase
               Agreement And Related Documents Sufficiently Establish Big Lots'
               Claim That It Owns The Refunds of Taxes. ....................................................... 5

               1.     Article VIII Establishes That The Refunds of Taxes Were Not
                      Transferred By Big Lots And No Other Term In The Stock
                      Purchase Agreement States Otherwise. ..................................................... 5

               2.     The Financial Documents Of The KB Entities Prepared By The
                      Parties As Required By The Stock Purchase Agreement And
                      Necessarily Incorporated Therein, Confirm That The Refunds of
                      Taxes Were Not Transferred To KB Acquisition And/Or The KB
                      Entities. ..................................................................................................... 6

        B.     Big Lots' Claims Are Not Barred By The Contractual Statute Of
               Limitations. ...................................................................................................... 10

V.      CONCLUSION.................................................................................................................12

120156.01600/40139999v1

## TABLE OF AUTHORITIES

**Cases**

Ades v. Deloitte & Touche, 1993 WL 362364 (S.D.N.Y. 1993)......................................... 3

Barnum v. Millbrook Care Ltd. Pship, 850 F. Supp 1227 (S.D.N.Y. 1994) ................................ 2

Bilinski v. Farmers Bank of the State of Delaware, Del. Super., 1982 WL 172848 (1982) ........ 11

Colburn v. Upper Darby Tp., 838 F.2d 663 (3rd Cir. 1988)......................................... 2, 9, 12

Conley v. Gibson, 355 U.S. 41 (1957)......................................... 2, 12

Goodwin v. Elkins & Co., 730 F. 2d 99 (3rd Cir. 1984) ......................................... 2

Hynansky v. Vietri, 2003 WL 21976031 (Del. Ch 2003)......................................... 8

Nami v. Fauver, 82 F. 3d 63 (3rd Cir. 1996) ......................................... 2, 12

Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F. 2d 1192 (3rd Cir. 1993) ......................................... 2

Taylor v. Jones, 2002 WL 31926612 (Del.Ch. 2002)......................................... 8

Official Committee of Unsecured Creditors of Louis/USA, Inc. v. Conseco Financing Serv. Corp., 264 B.R. 69 (S.D.N.Y. 2001)......................................... 2

Western Mining & Investments, LLC v. Bankers Trust Co., 2003 WL 503403 (D. Del. 2003).... 2

**Statutes**

Fed R. Civ. P 10......................................... 2

Fed. R. Civ. P. 15......................................... 8

**Other Authorities**

*Black's Law Dictionary*, 130 (5th Ed. 1979) ......................................... 6

*Original Pronouncements, Accounting Standards*, CON 5 (Financial Accounting Standards Board 1998) ......................................... 6

120156.01600/40139999v1

## I.    INTRODUCTION

Because this Court must accept as true the factual allegations contained in plaintiff's amended complaint, defendants' motion to dismiss must be denied. At this point, the sole issue that must be decided by this Court is whether the amended complaint contains sufficient factual allegations that, conceding they are true, establish that certain tax refunds (the "Refunds of Taxes") remained the property of Big Lots Stores, Inc. ("Big Lots") rather than being transferred to debtor KB Acquisition Corporation ("KB Acquisition") pursuant to the Stock Purchase Agreement at issue. As set forth below, the amended complaint meets that burden and states a cognizable legal and factual claim that the Refunds of Taxes are Big Lots' property, not property of any of the debtors, and should not be a part of any debtors' bankruptcy estate. That being true, Big Lots is entitled to the relief sought in its amended complaint which includes:

(1)    A declaration that the Refunds of Taxes are owned by Big Lots;

(2)    An accounting and money judgment in the amount of the Refunds of Taxes improperly taken by debtors;

(3)    A money judgment for damages arising from debtors' conversion of Big Lots' property; and

(4)    Injunctive relief prohibiting debtors from asserting any rights or entitlement to any portion of the Refunds of Taxes.

In support of its opposition, Big Lots submits this Answering Brief, its Amended Complaint and the affidavit of L. Michael Watts, including its attachments.

## II.    STANDARD APPLICABLE TO DEFENDANTS' MOTION TO DISMISS

The proponent of a motion to dismiss bears a heavy burden of proof. That is because "the purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the

1

case." <u>Western Mining & Investments, LLC v. Bankers Trust Co.</u>, 2003 WL 503403 at *1 (D.

Del. 2003) (emphasis supplied) (copy attached hereto as exhibit "B"). The United States

Supreme Court and Third Circuit have set forth the following applicable standard:

> in appraising the sufficiency of the complaint, we follow, of
> course, the accepted rule that a complaint should not be dismissed
> for failure to state a claim unless it appears beyond doubt that the
> plaintiff can prove no set of facts in support of his claim which
> would entitle him to relief.

See <u>Conley v. Gibson</u>, 355 U.S. 41 (1957); <u>Nami v. Fauver</u>, 82 F. 3d 63, 65 (3d. Cir. 1996).

Thus, this Court must look to "whether sufficient facts are pleaded to determine that the

complaint is not frivolous, and to provide defendants with adequate notice to frame an answer."

<u>Colburn v. Upper Darby Tp.</u>, 838 F.2d 663, 666 (3d. Cir. 1988).

In addition to the allegations of the amended complaint, in the context of a motion

to dismiss, this Court must consider "an undisputedly authentic document" if the plaintiff's

claims are based upon the document.[1] See <u>Pension Benefit Guaranty Corp. v. White</u>

<u>Consolidated Industries, Inc.</u>, 998 F. 2d 1192, 1196 (3d. Cir. 1993) (permitting consideration of

documents attached by defendant to motion to dismiss); <u>see also</u> <u>Goodwin v. Elkins & Co.</u>, 730

F. 2d 99 (3d. Cir. 1984) (Becker J. concurring); <u>Official Committee of Unsecured Creditors of</u>

<u>Louis/USA, Inc. v. Conseco Financing Serv. Corp.</u>, 264 B.R. 69, 89-90 (S.D.N.Y. 2001) (on

motion to dismiss court may consider "contents of any documents attached to the complaint or

incorporated by reference . . . [a]nd where a plaintiff alleges a claim based upon a written

instrument, the court may consider such an instrument even if it was not attached to the

complaint and incorporated under Rule 10(c)"); <u>Barnum v. Millbrook Care Ltd. Pship</u>, 850 F.

---

[1] Fed R. Civ. P 10 does not require that all documents which form the basis of a plaintiff's claim be attached to the complaint. Although the entire Stock Purchase Agreement was not attached to plaintiff's amended complaint, defendants incorporate it in their motion to dismiss. Thus, defendants have waived any objection to this Court considering documents not attached to the Complaint. See Defendants' Motion at Statement of Facts.

2

120156.01600/40139999v1

Supp 1227, 1232-33 (S.D.N.Y. 1994) (in the event plaintiff alleges a claim based on a written

instrument . . . the court may consider such an instrument on a Rule 12(b)(6) motion even if it

was not attached to the complaint and made a part thereof under Rule 10(c)."); <u>Ades v. Deloitte</u>

<u>& Touche</u>, 1993 WL 362364 at *7-8 (S.D.N.Y. 1993) (copy attached hereto as exhibit "C").

## III.    FACTS

Under the above criteria, the following allegations must be accepted as true.  In

2000, Big Lots sold to Debtor, KB Acquisition, the business known as KB Toys (the "KB

Entities").  <u>See</u> Amended Complaint ¶ 76.  The sale was pursuant to a December 7, 2000 Stock

Purchase Agreement.  <u>Id</u>.  A true and accurate copy of the Stock Purchase Agreement is attached

hereto as Exhibit A-1.[2]

The Stock Purchase Agreement addressed the terms and conditions of the stock

sale.  <u>Id</u>. at ¶ 78.  Article VIII of the Stock Purchase Agreement contains numerous provisions

related to tax issues, including the Refunds of Taxes.[3]  <u>Id</u>. at ¶ 79.  Section 8.03(d) of the Stock

Purchase Agreement requires debtor, KB Acquisition, to pay to Big Lots Refunds of Taxes that

debtors receive for: (1) "Income Taxes paid by [Big Lots]" during the "Pre-Closing Tax Period";

or (2) Miscellaneous Taxes paid by [Big Lots] for the Pre-Balance Sheet Tax Period.[4]  <u>Id</u>. at ¶¶

80-2.  Further, "pursuant to the provisions of Section 8.03(d). . . <u>and the additional terms and</u>

<u>conditions agreed upon by the parties as set forth in the Agreement and its schedules</u>" the

Refunds of Taxes "were not sold by Big Lots to KB Acquisition and/or its Affiliates."  <u>Id</u>. at ¶ 81

---

[2] While defendants rely on the Stock Purchase Agreement to support their motion to dismiss, they did not attach a copy to their motion. <u>See</u> Defendants' Motion to Dismiss. Thus, for ease of reference a copy is attached hereto.

[3] Article VIII was attached to Big Lots' amended complaint.

[4] "Pre-Closing Tax Period" is defined as "any Tax Period ending on or before the Closing Date." "Pre-Closing Balance Sheet Period" is defined as any Tax period ending on or before the "Balance Sheet Date." <u>See</u> Stock Purchase Agreement at Section 8.01. The Closing Date was December 7, 2000 and the Balance Sheet Date was October 28, 2000. <u>See id</u>. at Section 1.01.

3

(emphasis added). Indeed, "at all times the Refunds of Taxes remained the property of Big Lots." Id.

KB Acquisition and the KB Entities have received Refunds of Taxes both pre-bankruptcy and post-bankruptcy. Id. at ¶ 83. Despite Big Lots' numerous demands that KB Acquisition and the KB Entities turn over the Refunds of Taxes, KB Acquisition and KB Entities have refused. Id. at ¶ 85.

Defendants' motion to dismiss relies on only two arguments. First, defendants argue that because Big Lots has not alleged sufficient facts to support its ownership of the Refunds of Taxes, all of its claims fail. See Defendants' Motion at Sections A, B and C. Second, defendants argue that Big Lots' claims are barred by the contractual statute of limitations. See id. at Section D. In limiting their argument to these two issues, defendants have not alleged that the amended complaint is otherwise deficient as to its allegations. Thus, Big Lots will address only the two limited issues argued by defendants.

4

## IV.  ARGUMENT

### A.  If Accepted As True, The Allegations In The Amended Complaint Which Incorporate The Terms And Conditions Of The Stock Purchase Agreement And Related Documents Sufficiently Establish Big Lots' Claim That It Owns The Refunds of Taxes.

Defendants' motion to dismiss, which argues that "Big Lots relies solely on Section 8.03 of the Agreement" to establish its ownership interest in the Refunds of Taxes mischaracterizes the allegations underpinning the amended complaint.  See Defendants' Motion at Section A.  Indeed, Big Lots' amended complaint alleges:

> Pursuant to 8.03(d), quoted above, and the additional terms and conditions agreed upon by the parties as set forth in the Agreement and its schedules, [the Refunds of Taxes] referenced therein were not sold by Big Lots to KB Acquisition and/or its Affiliates.

See Amended Complaint at ¶ 81 (emphasis supplied).  Thus, Big Lots' amended complaint makes clear that it relies on the entire Agreement and the obligations undertaken by the parties thereunder to support its claims.

### 1.  Article VIII Establishes That The Refunds of Taxes Were Not Transferred By Big Lots And No Other Term In The Stock Purchase Agreement States Otherwise.

On its face, Article VIII makes clear that the Refunds of Taxes were not transferred to KB Acquisition and thus they remained the property of Big Lots.  Indeed, pursuant to Section 8.03(b), KB Acquisition covenanted that neither it nor any of its subsidiaries or affiliates would take any action against or otherwise use any tax attribute that belonged to Big Lots:

> Buyer covenants that it will not cause or permit the Company, any Subsidiary or any Affiliate of [KB Acquisition] (i) to take any action on or after the Closing Date, including but not limited to the distribution of any dividend or the effectuation of any redemption... (C) other than as required by law, which could give

5

rise to any Tax liability of the Seller Group, <u>the use of any Tax attribute of the Seller Group or any loss of the Seller Group. . .".</u>

<u>See</u> Stock Purchase Agreement at 8.03(b) (emphasis supplied).  By referencing "any Tax attribute of the Seller Group," the Stock Purchase Agreement acknowledges that certain Tax attributes belonged to and remained the property of the Seller, Big Lots.

The same holds true for Section 8.03(d).  Therein, KB Acquisition is required to pay to Big Lots Refunds of Taxes that debtors receive for: (1) "Income Taxes paid by [Big Lots]" during the "Pre-Closing Tax Period"; or (2) "Miscellaneous Taxes paid by [Big Lots]" for the "Pre-Balance Sheet Tax Period."  <u>See</u> <u>id</u>. at 8.03(d).  The repayment obligation set forth in the Stock Purchase Agreement begs an obvious question - why would KB Acquisition purchase something, only to agree to subsequently give it back?  The answer is self-evident - KB Acquisition never purchased the Refunds of Taxes as part of the deal.

**2.      <u>The Financial Documents Of The KB Entities Prepared By The Parties As Required By The Stock Purchase Agreement And Necessarily Incorporated Therein, Confirm That The Refunds of Taxes Were Not Transferred To KB Acquisition And/Or The KB Entities.</u>**

A balance sheet is "a statement of financial position of any economic unit, disclosing as at a given moment of time, its assets, at cost, depreciated cost, or other indicated value, its liabilities, and the general equity of the owners in conformity with generally accepted accounting principles.  <u>See</u> *Black's Law Dictionary*, 130 (5th Ed. 1979).[5]  Indeed, "financial statements are a central feature of financial reporting - a principal means of communicating financial information to those outside the entity."  <u>See</u> *Original Pronouncements, Accounting Standards*, CON 5 ¶ 5 (Financial Accounting Standards Board 1998).  "In external general purpose financial reporting, a financial statement is a formal tabulation of names and amounts of

---

[5] "Consolidated Balance Sheet" is defined as covering "combined operations of affiliated companies, divisions, or subdivisions."  <u>See</u> *Black's Law Dictionary*, 130 (5th Ed. 1979).

120156.01600/40139999v1

money derived from accounting records that displays either financial position of an entity at a moment in time or one or more kind of changes in financial position of an entity during a period of time." Id.

The Stock Purchase Agreement references, and thereby incorporates, various financial documents, including balance sheets, prepared by the parties as part of the Stock Purchase Agreement. Under Section 3.08, Big Lots represented that "The Balance Sheet and the related unaudited statements of income and cash flow for the year-to-date period ending on the Balance Sheet Date . . . (a) fairly present, in all material respects, the financial position of the Company and its Subsidiaries as of such dates. . ."[6] Attached as Exhibit A-2 is a true and accurate copy of the consolidated balance sheet referenced in Section 3.08 of the Stock Purchase Agreement. By definition, that balance sheet reflects the assets and liabilities of the KB Entities as of its date - October 28, 2000.

In addition, pursuant to Section 8.03(k), after the closing KB Acquisition was required to "cause" all of the KB Entities:

> to close its books and prepare a general trial balance for each legal entity for (i) the period beginning January 30, 2000 and ending on the Closing Date, (ii) the accounting period ending on the Balance Sheet Date, and (iii) the final accounting period ending with the Closing Date.

Section 8.03(k) requires KB Acquisition to provide the financial statements for the separate legal entities "in hard copy form as well as electronic format" to Big Lots. Id. Thereafter, Big Lots "shall have a right to review the general ledgers for the separate legal entities to insure they are complete and prepared in a manner consistent with prior accounting practices." Id. Section 8.03(k) also sets forth the procedure by which the parties were to correct any "errors and

---

[6] Article I, Section 1.01 of the Stock Purchase Agreement defines "Balance Sheet" as "the unaudited balance sheet of the Company and its Subsidiaries as of October 28, 2000 referred to in Section 3.08." The same Section defines "Balance Sheet Date" to mean "October 28, 2000."

120156.01600/40139999v1

omissions" such that the financial statements associated with the closing can be finalized. Id. Finally, "once [Big Lots] has determined that the general ledgers for the separate legal entities are complete and accurate, [KB Acquisition] shall provide Seller with the general ledgers in an electronic format that can be uploaded into 'Corptax.'" Id. (emphasis supplied). Attached, as Exhibits A-3 and A-4 are true and accurate copies of the final consolidated balance sheet of the KB Entities prepared by KB Acquisition and provided to Big Lots pursuant to the terms and conditions of Section 8.03(k).

The attached balance sheets, which are both referenced by, required by, and incorporated in the Stock Purchase Agreement, summarize the assets and liabilities of the KB Entities on two given dates - October 28, 2000 and December 7, 2000. Most important to Big Lots' claims herein is that the latter lists the assets and liabilities contained in the KB Entities on the date they were transferred by Big Lots to KB Acquisition pursuant to the Stock Purchase Agreement.[7] Such a conclusion only makes sense. Unless each and every asset in the KB Entities is expressly listed in the Stock Purchase Agreement, it is impossible to tell precisely what assets are owned by the KB Entities on the date of the sale. No such list exists in the Stock Purchase Agreement. See generally, Stock Purchase Agreement. Thus, in order to identify the assets of the KB Entities at the time of the stock sale, reference must be made to the financial

---

[7] Because the attached balance sheets were referred to in, and in fact required by the terms and conditions of, the Stock Purchase Agreement, the balance sheets are part of the Stock Purchase Agreement. Even if they are not, the balance sheets are not parol evidence. The parol evidence rule prevents consideration of "evidence that would contradict either total or partial integrated documents." Taylor v. Jones, 2002 WL 31926612 at *3 (Del.Ch. 2002) (copy attached hereto as exhibit "D"); see also Hynansky v. Vietri, 2003 WL 21976031 at *2 (Del. Ch 2003) (parol evidence rule prevents use of extrinsic evidence to "vary" a fully integrated writing) (copy attached hereto as exhibit "E"). Further, "if a written agreement is final and incomplete, it is a partially integrated contract." Id. Finally, "supplementation of partially integrated contracts" with consistent additional agreements is permitted. Id. Here the balance sheets neither contradict nor vary any term or condition of the Stock Purchase Agreement. Indeed, the Stock Purchase Agreement required KB Acquisition to prepare the December 7, 2002 balance sheet after closing. Finally, if this Court rejects the above, Big Lots should be permitted to file an amended complaint to attach the balance sheets. See Fed. R. Civ. P. 15(a) (leave to amend a complaint "shall be freely given when justice so requires").

8

statements on the date of the sale. That is precisely the reason the Stock Purchase Agreement

references and incorporates numerous financial statements of the KB Entities.

Even a cursory review reveals that numerous assets appearing on the October 28,

2000 balance sheet are not on the December 7, 2000 Closing Date balance sheet. Included in the

assets not present on the December 7, 2000 balance sheet are the Refunds of Taxes at issue -

listed as line item nos. 2258, 2259, 2270, 2271, 2272, 2273, 2274, 2277, 2278, 2280, 2281, 2282,

2283 and 2284.[8] Any asset not present on the closing date balance sheet was not an asset of KB

Entities being transferred pursuant to the Stock Purchase Agreement. Thus, the inescapable

conclusion is the Refunds of Taxes were not transferred and ownership was retained by Big Lots.

Big Lots' amended complaint, the attachment thereto and the additional

documents appropriately considered by this Court, sufficiently establish that the amended

complaint "is not frivolous" and that it provides "defendants with adequate notice to frame an

answer." Colburn v. Upper Darby Tp., 838 F. 2d 663, 666 (3d. Cir 1988). Indeed, defendants'

primary argument - that Big Lots does not own the Refunds of Taxes - is not supported by the

facts and is simply wrong. But even if the defendants could adduce facts that they owned the

Refunds of Taxes (which they have not and cannot do), still under the proper legal standard

applicable to this motion to dismiss, this Court must discount such facts and accept as true the

facts alleged by Big Lots. Further, with the exception of the statute of limitations addressed

infra, defendants present no other argument in support of their motion. In so doing, defendants

have conceded that Big Lots' amended complaint survives a motion to dismiss in all other

respects.

---

[8] The October 28, 2000 Balance Sheet contained asset entries for each of these line items. Thus, the inescapable conclusion is the assets were removed from the KB Entities after October 28, 2000 and prior to transfer on December 7, 2000, obviously in recognition of the fact that KB Acquisition was not purchasing the Refunds of Taxes.

**B.    Big Lots' Claims Are Not Barred By The Contractual Statute Of Limitations.**

Defendants' claim that "Section 11.01 provides that any claim for breach of a

covenant expires prior to June 2002" is simply wrong.  Section 11.01 states:

> The covenants, agreements, representations and warranties of the
> parties hereto contained in this Agreement or in any certificate
> delivered pursuant to Article X shall survive the Closing and
> remain in full force and effect until the date that is eighteen months
> after the Closing Date; provided, that (i) the covenants,
> agreements, representations and warranties contained in Section
> 3.20 and Articles VIII and IX shall survive until expiration of the
> applicable statutory period of limitations (giving effect to any
> waiver, mitigation or extension thereof) and for 30 days thereafter,
> if later; (ii) the representations and warranties contained in Section
> 3.21 shall survive the Closing until the date that is three years after
> the Closing Date; (iii) the covenants, agreements, representations
> and warranties contained in Sections 5.09, 5.12, 6.05, 7.04, 7.05
> and this Article XI shall survive the Closing for the term or terms
> set forth therein and for 30 days thereafter; and (iv) the covenants,
> agreements, representations and warranties set forth in Sections
> 3.05, 3.06, 4.07(b), 4.10, 5.06, 6.01, 6.02, 7.01, 7.06, 7.07 and
> 11.05 and Article XIII shall continue in full force and effect
> without limit. Notwithstanding the preceding sentence, any
> covenant, agreement, representation or warranty in respect of
> which indemnity may be sought under this Article XI shall survive
> the time at which it would otherwise terminate pursuant to the
> preceding sentence, if notice of the inaccuracy or breach thereof
> giving rise to such right to indemnity shall have been given (with
> reasonable specificity, in light of the facts then known) to the party
> against whom such indemnity may be sought prior to such time.
> For purposes of the immediately preceding sentence, Buyer and
> Seller shall each be deemed to have given the other party adequate
> notice of a claim for Losses in connection with the matters subject
> to indemnification pursuant to Section 11.05.

(emphasis added).

Even assuming Big Lots' claim is based upon a breach of a covenant set forth in

Article VIII, the applicable statutory statute of limitations applies, not the eighteen months

therein.  Any such claim thereunder would be based upon breach of contract or conversion – both

of which have three years limitations period arising when the breach or injury arise, respectively.

10

See Bilinski v. Farmers Bank of the State of Delaware, Del. Super., 1982 WL 172848 at 2 (1982) (copy attached hereto as exhibit "F") (Citations Omitted).  Big Lots has initiated its action well within that time period.  Indeed, every instance in which debtors receive and retain Big Lots' Refunds of Taxes provides a new claim.

   Furthermore, given the nature of the relief sought by Big Lots - a declaration of its rights under the Stock Purchase Agreement - the contractual limitation period simply does not apply.

11

## V.    CONCLUSION

Big Lots' amended complaint more than satisfies its burden and establishes Big Lots' claim that it owns the Refunds of Taxes. This Court cannot conclude "beyond doubt" that Big Lots can prove no set of facts which would entitle Big Lots to relief. See Conley v. Gibson, 355 U.S. 41 (1957); Nami v. Fauver, 82 F. 3d 63, 65 (3d. Cir. 1996). Big Lots amended complaint is sufficiently pled factually, "is not frivolous", and certainly provides "defendants with adequate notice to frame an answer." Colburn v. Upper Darby Tp., 838 F.2d 663, 666 (3d. Cir. 1988). Defendants motion to dismiss should be denied.

Dated: May 20, 2004                                BLANK ROME LLP

                                                   *Michael DeBaecke*
                                                   _____
                                                   Michael D. DeBaecke (No. 3186)
                                                   1201 N. Market Street, Suite 800
                                                   Wilmington, Delaware 19801
                                                   (302) 425-6412

                                                   and

                                                   Robert J. Sidman
                                                   William D. Kloss, Jr.
                                                   Vorys, Sater, Seymour and Pease LLP
                                                   52 East Gay Street
                                                   Columbus, Ohio  43215
                                                   (614) 464-6400
                                                   Attorneys for Big Lots Stores, Inc.

120156.01600/40139999v1