**EXHIBIT F**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: <br><br> KB TOYS, INC., *et al.*, <br><br> Debtors. | Chapter 11 <br><br> Case No. 04-10120 (JBR) <br> (Jointly Administered) |
| BIG LOTS STORES, INC., <br><br> Plaintiff <br><br> v. <br><br> KB ACQUISITION CORPORATION, *et al.*, <br><br> Defendants. | Adversary Proceeding No. 04-53134 (JBR) <br><br> Re: Docket No. 24 |

## DEFENDANTS' REPLY MEMORANDUM TO PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Joel A. Waite (No. 2925)
M. Blake Cleary (No. 3614)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
Tel:  (302) 571-6600
Fax: (302) 571-1253

– and –

HALE AND DORR LLP
Mark N. Polebaum (BBO #402060)
Mitchel Appelbaum (BBO #558579)
Dennis L. Jenkins (BBO #637065)
60 State Street
Boston, MA  02109
Tel:  (617) 526-6000
Fax:  (617) 526-5000

Counsel for Debtors and Debtors In Possession

## TABLE OF CONTENTS

I.    INTRODUCTION .............................................................................................1

II.   SUMMARY OF ARGUMENT ......................................................................1

III.  STATEMENT OF FACTS ...............................................................................2

IV.   ARGUMENT......................................................................................................2

      A.   Standard of Review.................................................................................2

      B.   In Deciding the Motion to Dismiss, the Court May Properly
           Consider the Written Instrument Upon Which the Plaintiff's Claims
           Are Based....................................................................................................3

      C.   The Agreement Does Not Transfer the Qualified Tax Refunds to Big
           Lots ..............................................................................................................4

V.    CONCLUSION....................................................................................................7

WP3:1007273 1                                                            62865 1001

# TABLE OF AUTHORITIES

Federal Cases

*Barnum v. Millbrook Care Ltd. P'ship,*
  850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994) .................................................................. 3

*Doug Grant, Inc. v. Greater Bay Casino Corp.,*
  232 F.3d 173, 184 (3d Cir. 2000) ....................................................................................... 3

*In re Rockefeller Center Props., Inc. Secs. Litig.,*
  311 F.3d 198, 216 (3d Cir. 2002) ....................................................................................... 2

*Lum v. Bank of Am.,*
  361 F.3d 217, 223 (3d Cir. 2004) ....................................................................................... 2

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,*
  998 F.2d 1192, 1196 (3d Cir. 1993) ................................................................................... 3


State Cases

*City Investing Co. Liquidating Trust v. Continental Casualty Co.,*
  624 A.2d 1191, 1198 (Del. 1993).......................................................................................... 7

*Eagle Indus., Inc. v. DeVilBiss Health Care, Inc.,*
  702 A.2d 1228, 1232 (Del. 1997)......................................................................................... 7

*Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.,*
  616 A.2d 1192, 1196 (Del. 1992).......................................................................................... 7

*True North Communications, Inc. v. Publicis S.A.,*
  711 A.2d 34, 38 (Del. Ch. 1998) .......................................................................................... 7

62865 1001

WP3:1007273 1

## I.     INTRODUCTION

The Defendants' Motion to Dismiss should be granted because the amended complaint fails to allege facts sufficient to establish Big Lots Stores, Inc.'s ("Big Lots") claim of ownership over certain tax refunds that have been in, or may come into, the possession, custody and control of KB Acquisition Corp. ("KBAC") or its affiliates. Even accepting the allegations of fact in the amended complaint as true and drawing every reasonable inference in favor of Big Lots, Big Lots has failed to state a claim upon which relief can be granted. Big Lots is simply attempting to elevate its status above all other creditors in these bankruptcy proceedings by asking this Court to convert an unmistakable, prepetition unsecured claim against KBAC into an ownership interest in the assets of indirect subsidiaries of KBAC.

## II.     SUMMARY OF ARGUMENT

Big Lots has failed to adequately plead any claim of an ownership interest in the Qualified Tax Refunds (as defined below). KBAC and Big Lots are party to a prepetition stock purchase agreement that obligates KBAC to "promptly pay or . . . cause prompt payment to be made to [Big Lots]" of certain tax refunds. Feldman Aff. at Ex. A, § 8.03(d).[1] Such a promise to pay is a prepetition unsecured obligation that cannot be twisted or manipulated into a transfer of ownership of an asset, the granting of a security interest, or the imposition of a constructive trust as Big Lots contends. Moreover, KBAC's affiliates are not parties to the Agreement (as defined below) and owe no obligation to Big Lots. As described herein and in the Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss [Docket No. 25], Big Lots has failed to state a claim upon which relief can be granted and, therefore, this adversary proceeding should be dismissed.

---

[1] The defendants refer to the Affidavit of Mr. Robert J. Feldman, filed with this Court on April 21, 2004 in support of the Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction [Docket No. 23], and incorporated by reference in the Memorandum in Support of Defendants' Motion to Dismiss [Docket No. 25].

62865 1001

III.    **STATEMENT OF FACTS**

KBAC was organized under the laws of the state of Delaware on November 28, 2000 in order to acquire the KB Toys business through the purchase of the shares of Havens Corners Corporation from Big Lots pursuant to a Stock Purchase Agreement between KBAC and Big Lots (the "Agreement"), dated as of December 7, 2000. KBAC and Big Lots are the only parties to the Agreement. None of KBAC's affiliates are party to the Agreement. Feldman Aff. ¶ 2 (a copy of the Agreement is attached as Exhibit A to the Feldman Affidavit).

Section 8.03(d) of the Agreement provides that KBAC "shall promptly pay or shall cause prompt payment to be made to [Big Lots] of all refunds of Taxes and interest thereon, as well as all Tax benefits arising from" certain refunds of taxes received by KBAC or any of its affiliates on account of income taxes paid by Big Lots for any tax period ending on or before December 7, 2000 (the "Qualified Tax Refunds"). Feldman Aff. at Ex. A, § 8.03(d). The unequivocal, plain meaning of the language of Section 8.03(d) is that KBAC has a payment obligation to Big Lots that is measured by the amount of Qualified Tax Refunds that are received by either KBAC or its affiliates. Nowhere in the Agreement does it say that KBAC or its affiliates transfer ownership in the Qualified Tax Refunds to Big Lots or grant Big Lots a security interest in the Qualified Tax Refunds. Id.

IV.    **ARGUMENT**

A.    **Standard of Review**

An action should be dismissed if it appears that that the plaintiff can prove no set of facts consistent with the allegations pleaded in the complaint that would entitle him to relief. Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004); see also Pl.'s Answering Br. at 2 [Docket No. 97]. In making its determination, however, the court need not accept as true bald assertions, unsupported conclusions or unwarranted inferences asserted in the complaint. In re Rockefeller

2

Center Props., Inc. Secs. Litig., 311 F.3d 198, 216 (3d Cir. 2002); Doug Grant, Inc. v. Greater

Bay Casino Corp., 232 F.3d 173, 184 (3d Cir. 2000). An examination of the substance of the

allegations asserted in the amended complaint filed in this action reveals that Big Lots simply

cannot establish an ownership interest in the Qualified Tax Refunds.

**B.    In Deciding the Motion to Dismiss, the Court May Properly Consider the Written Instrument Upon Which the Plaintiff's Claims Are Based**

In deciding a motion to dismiss, courts generally consider allegations pleaded in the

complaint, exhibits attached to the complaint, and matters of public record. 5A C. Wright &

A.R. Miller, Federal Practice and Procedure § 1357 (2004). As the plaintiff notes in its

Answering Brief in Opposition to the Defendants' Motion to Dismiss ("Answering Brief")

[Docket No. 97], the court may also consider "an undisputedly authentic document that a

defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the

document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss

simply by failing to attach a dispositive document on which it relied." Pension Benefit Guar.

Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). The

parties agree that the Court may properly consider the Agreement, as attached as an exhibit to the

Affidavit of Robert J. Feldman [Docket No. 23] and incorporated by reference into the

Memorandum in Support of Defendants' Motion to Dismiss [Docket No. 25], and as filed by Big

Lots with its Answering Brief.[2] In such an instance, it is the content of the document that

controls and not the allegations of the complaint. See Barnum v. Millbrook Care Ltd. P'ship,

850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994) ("[I]f the allegations of a complaint are

contradicted by documents made a part thereof, the document controls and the court need not

---

[2] Without citing any authority in support thereof, the plaintiff incorrectly concludes that by incorporating the Agreement into their motion to dismiss, the defendants have waived any objection to this Court considering documents not attached to the Complaint. Pl.'s Answering Br. at 2 n.1. To the contrary, the defendants believe that this Court may properly consider only the Agreement, which is the sole written instrument upon which the plaintiff has alleged an ownership interest in the Qualified Tax Refunds. See Am. Compl. ¶ 81

3

62865 1001

accept as true the allegations of the complaint."). As set forth in more detail below, there are no words in the entire Agreement that support Big Lots' claim that it <u>owns</u> or has a security interest in the Qualified Tax Refunds.

### C.    The Agreement Does Not Transfer the Qualified Tax Refunds to Big Lots

As evidence of its ownership interest in the Qualified Tax Refunds, Big Lots relies on Section 8.03(d) of the Agreement, "the additional terms and conditions agreed upon [sic] the parties <u>as set forth in the Agreement and its schedules,</u>" Am. Compl. ¶ 81 (emphasis added), and Section 8.03(b) of the Agreement. Neither Section 8.03(d) nor Section 8.03(b) of the Agreement can be construed to transfer ownership of Qualified Tax Refunds to Big Lots and whether Qualified Tax Refunds were or were not listed in balance sheets delivered in connection with the closing of the Agreement is entirely irrelevant to an interpretation of the Agreement.

KBAC's obligation in Section 8.03(d) is a simple promise to pay: "Buyer shall promptly pay or shall cause prompt payment to be made." Feldman Aff. at Ex. A, § 8.03(d). A promise to pay is not susceptible of being interpreted to transfer ownership of the asset on account of which payment has been promised. To rule otherwise would convert virtually all unsecured claims in the Debtors' cases into secured claims.

The Agreement is a stock purchase agreement by which KBAC purchased the KB Toys business from Big Lots through the purchase of 100% of the stock of Havens Corners Corporation. Whatever tax attributes or other assets Havens Corners Corporation or its subsidiaries had as of the closing date continued to be the tax attributes or the assets of such entities unless there is something in the agreement that transferred to Big Lots such attributes or assets. This is the natural and intended consequence of any stock purchase agreement. Section 8.03(d) simply fails to serve as language of transfer. In fact the clear implication of Section 8.03(d) is to the exact opposite of Big Lots' assertion. The parties to the Agreement

4

understood that KBAC and its subsidiaries would continue to own Qualified Tax Refunds and that if and when a Qualified Tax Refund is received, KBAC would pay such amount to Big Lots.[3] Big Lots accepted the unsecured promise of KBAC to make payment when due.[4] A right to payment under a prepetition contract is a quintessential claim as defined in Section 101(5) of the Bankruptcy Code. The claim is not alleged to be secured by a lien on KBAC's assets and it is not alleged to be entitled to a statutory priority. Accordingly, it is an unsecured claim.

Section 8.03(b) is of no greater assistance to Big Lots. In Section 8.03(b), KBAC "covenants" that it will not and will not permit its subsidiaries to use their tax attributes for pre-closing periods in a way that would result in a tax liability to Big Lots. This is a simple promise to refrain from taking specified actions. It has no language of transfer that supports Big Lots' claim. Indeed, the second half of Section 8.03(b), which is not quoted by Big Lots, is a mirror image of the language quoted by Big Lots, in which Big Lots agrees not to take any action with respect to the tax attributes of the company and its subsidiaries that would result in a tax liability to KBAC. These mutual and reciprocal covenants leave the tax attributes exactly where they were pre-closing and limit the manner by which KBAC and Big Lots may, through their respective tax returns, affect the tax liability of the other.

A simple comparison of Section 2.01 to Sections 8.03(d) and 8.03(b) demonstrates the difference between language of transfer versus an agreement to pay or to refrain from taking action. Section 2.01 provides that seller agrees to "sell" and buyer agrees to "purchase" the

---

[3] Moreover, the sophisticated parties to the Agreement knew precisely how to exclude the transfer of certain property when they intended such an exclusion. For example, in Section 5.11 of the Agreement, Big Lots expressly excluded the transfer of two of its jet aircraft.

> Immediately prior to the Closing, Seller shall cause Pheasant Kay-Bee Toy, Inc., a Subsidiary of the Company, to transfer its limited liability company membership interests in Sonoran LLC, a Delaware limited liability company ("Sonoran"), and Sahara LLC, a Delaware limited liability company ("Sahara") to Seller. Seller represents and warrants that neither Sonoran or Sahara has any assets or liabilities other than related to two jet aircraft that are used by Seller

[4] Big Lots' claims under all circumstances cannot be maintained against any party other than KBAC, regardless of the interpretation of the Agreement, because only KBAC is a party to the Agreement

5

shares of Havens Corners Corporation. The parties intended to transfer ownership of an asset and used clear language of purchase and sale. In Sections 8.03(b) and 8.03(d) the parties agreed that they "will not take any action" and "pay or cause to be paid," clearly not words of transfer.

Lastly, Big Lots argues that closing date balance sheets of the company and its subsidiaries establish that Qualified Tax Refunds were transferred to Big Lots. The balance sheets are not relevant to an interpretation of the Agreement. First, neither Section 8.03(b), nor 8.03(d) refers to a balance sheet for any purpose, including for the purpose of transferring, assets owned by Havens Corners Corporation and its subsidiaries to Big Lots. Second, the balance sheets are used in the Agreement primarily to calculate the purchase price. Third, the presence or absence of Qualified Tax Refunds on the balance sheets may be nothing more than evidence that the facts or circumstances which might give rise to a right to receive a tax refund had not yet occurred, making it inappropriate to reflect it on a balance sheet. [5] Lastly, to the extent the balance sheets are being used by Big Lots to contradict the explicit terms of the Agreement, they must be excluded as parol evidence. [6,7]

---

[5] The plaintiff argues at length that the balance sheets referenced in the Agreement prove that the Qualified Tax Refunds were not transferred to KBAC because the refunds do not appear as assets on the balance sheet. Without waiving any objections to the authenticity or admissibility of the documents or plaintiff's arguments, the defendants note that it is a fundamental principle of accounting that potential assets whose realization and value are uncertain, such as tax refunds, are not recorded on the balance sheet in order to avoid the improper recognition of revenue prior to its realization. See generally FASB, Statement No. 5, Accounting for Contingencies; FASB, Statement No. 109, Accounting for Income Taxes. Thus, the uncertain future tax refunds referenced in the Agreement were properly excluded from the balance sheets under generally accepted accounting principles.

[6] This Court's review of the motion to dismiss may not be based on documents that are extraneous to the Agreement. The plaintiff alleges:

> Pursuant to the provisions of Section 8.03(d) [of the Agreement], . . . and the additional terms and conditions agreed upon [sic] the parties as set forth in the Agreement and its schedules, the refunds of taxes referenced therein ("Refunds of Taxes") were not sold by Big Lots to KB Acquisition and/or its Affiliates. Rather, at all times the Refunds of Taxes remained the property of Big Lots.

Am. Compl. ¶ 81 (emphasis added). By its own pleading, the plaintiff has limited the basis of its claims of ownership to the Agreement, which it has neither alleged nor claimed to be unclear or ambiguous. Despite the clear and unambiguous nature of the Agreement, however, the plaintiff urges this Court to consult "related documents" that are not referenced in the amended complaint and are not part of the Agreement in order to save its claims which are entirely unfounded in fact and law.

6

## V.   CONCLUSION

For the foregoing reasons, the defendants request that this Court dismiss the amended complaint in its entirety. The express terms of the Agreement do not support Big Lots' claim that it owns or has a security interest in the Qualified Tax Refunds. Moreover, none of KBAC's affiliates are a party to the agreement. The plaintiff, therefore, can prove no set of facts consistent with the allegations pleaded in the amended complaint that would entitle it to the requested relief. Thus, the defendants request that this adversary proceeding be dismissed.

*[Remainder of page intentionally left blank.]*

---

Under Delaware law, if a writing is plain and clear on its face, "the writing itself is the sole source for gaining an understanding of intent," and any parol evidence must be excluded. City Investing Co. Liquidating Trust v. Continental Casualty Co., 624 A.2d 1191, 1198 (Del. 1993) (citing Citadel Holding Corp. v. Roven, 603 A.2d 818, 822 (Del. Supr. 1992)). Where no ambiguity exists, a court must not resort to extrinsic evidence as an aid to interpretation, and "the Court must apply the meaning that would be ascribed to the language by a reasonable third party." True North Communications, Inc. v. Publicis S.A., 711 A.2d 34, 38 (Del. Ch. 1998). Moreover, an agreement is not rendered ambiguous "simply because the parties in litigation differ concerning its meaning" or proper construction. City Investing Co. 624 A.2d at 1198. A contract may only be considered ambiguous if it is "fairly susceptible of different interpretations or may have two or more different meanings." Eagle Indus., Inc. v. DeVilBiss Health Care, Inc., 702 A.2d 1228, 1232 (Del. 1997); see also Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1196 (Del. 1992).

Here, the Agreement is clear and unambiguous. In fact, the plaintiff has not asserted or suggested that any terms or provisions of the Agreement are ambiguous in any pleadings filed in this adversary proceeding. Because the Agreement is not reasonably or fairly susceptible to different interpretations or two or more different meanings, the Court can determine the plain meaning of the Agreement from the face of the document itself. Moreover, Section 13.10 of the Agreement explicitly states that the document "constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior written agreements, understandings and negotiations, both written and oral, between the parties with respect to the subject matter of this Agreement . . . ." Thus, this Court should properly exclude from its review any evidence offered by the plaintiff to contradict, vary, add to or subtract from the terms unambiguously set forth in the Agreement.

[7] For purposes of this Motion to Dismiss, Big Lots has apparently and properly abandoned its argument that KBAC's and Big Lot's agreement to make a Section 338(h)(10) election transformed a stock purchase agreement into an asset purchase agreement for all purposes. Such an election operates to calculate gain or loss on the transaction "as if [the seller] sold all of its assets in a single transaction." 26 U.S.C. § 338(h)(10). A Section 338(h)(10) election works a fiction for tax purposes. It does not convert a stock purchase agreement into an asset purchase agreement and does not make uncertain the interpretation of the words of an otherwise clear and unambiguous contract.

WP3:1007273 1                                                                                                    62865 1001

Date:  June 1, 2004

YOUNG CONAWAY STARGATT & TAYLOR,
LLP

Joel A. Waite (No. 2925)
M. Blake Cleary (No. 3614)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Tel: (302) 571-6600
Fax: (302) 571-1253

- and –

HALE AND DORR LLP
Mark N. Polebaum (BBO #402060)
Mitchel Appelbaum (BBO #558579)
Dennis L. Jenkins (BBO #637065)
60 State Street
Boston, MA  02109
Tel: (617) 526-6000
Fax: (617) 526-5000

Counsel for the Debtors and Debtors In Possession

WP3:1007273 1                                              62865 1001