IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| KB TOYS, INC., *et al.*, | : | Case No. 04-10120 (JBR) |
| | : | |
| Debtors. | : | Bk. Adv. Proc. 04-53134 (JBR) |
| | : | |
| BIG LOTS STORES, INC., | : | |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | Civil Action No. 04-1310 (KAJ) |
| | : | |
| KB ACQUISITION CORPORATION, *et al.*, | : | |
| | : | |
| Appellees. | : | |

**REPLY BRIEF OF APPELLANT BIG LOTS STORES, INC.**

**BLANK ROME LLP**
Michael D. DeBaecke (Del Bar No. 3186)
Jason W. Staib (Del. Bar No. 3779)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:   (302) 425-6400
Facsimile:   (302) 425-6464

- and -

**VORYS, SATER, SEYMOUR AND PEASE LLP**
Robert J. Sidman
William D. Kloss, Jr.
52 East Gay Street
Columbus, OH 43215
Telephone:   (614) 464-6400
Facsimile:   (614) 719-4962

*Counsel for Appellant
Big Lots Stores, Inc.*

# TABLE OF CONTENTS

                                                                                                    Page

ARGUMENT ..................................................................................................................1

I.   THE BANKRUPTCY COURT ERRED IN DISMISSING THE AMENDED COMPLAINT IN LIGHT OF THE SUBSTANTIAL EVIDENCE THAT BIG LOTS OWNS THE TAX REFUNDS. ........................1

II.  THE BALANCE SHEETS, JOURNAL ENTRIES AND WATTS AFFIDAVIT ARE HIGHLY RELEVANT AND ARE NOT EXCLUDED BY THE PAROL EVIDENCE RULE. ........................................3

   A.   The Balance Sheets, Journal Entries And The Watts Affidavit Are Highly Relevant And Should Not Be Ignored. ..................................3

   B.   The Parol Evidence Rule Does Not Bar This Court's Consideration Of The Balance Sheets, Journal Entries And The Watts Affidavit. ...............................................................................5

III. THE MOTION FOR SUMMARY JUDGMENT AND RELATED DOCUMENTS ARE PART OF THE RECORD ON APPEAL AND MAY BE CONSIDERED BY THIS COURT IN DETERMINING WHETHER THE BANKRUPTCY COURT ERRED IN GRANTING THE MOTION TO DISMISS. ...........................................................................9

   A.   The Summary Judgment Papers Were Designated Pursuant To Bankruptcy Rule 8006 And Are Part Of The Appellate Record ...........9

   B.   The Defendants Abandoned Their Motion To Strike, Failed To Designate It As An Item To Be Considered On Appeal And Otherwise Waived Any Argument That The Motion For Summary Judgment And Related Documents Are Not Part Of The Record On Appeal. ...............................................................10

   C.   The Motion To Strike And The Arguments Therein Lack Merit. .......11

CONCLUSION ............................................................................................................14

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*In re Kam Kuo Seafood Corp.*,
   76 B.R. 297 (Bankr. S.D.N.Y. 1987) .................................................................... 8

*In re Neshaminy Office Building Assocs.*,
   62 B.R. 798 (E.D. Pa. 1986) ........................................................................... 11, 13

*John P. Maguire & Co., Inc. v. Sapir (In re Candor Diamond Corp.)*,
   26 B.R. 844 (Bankr. S.D.N.Y. 1983) ................................................................... 13

**STATE CASES**

*All Pro Maids, Inc. v. Layton*,
   Civ. A. No. 058-N, 2004 WL 1878784 (Del. Ch. Aug. 10, 2004) ......................... 5

*Big Citadel Holding Corp. v. Roven*,
   603 A.2d 818 (Del. 1992) ...................................................................................... 7

*City Investing Co. Liquidating Trust v. Cont'l Cas. Co.*,
   624 A.2d 1191 (Del. 1993) ................................................................................ 6, 7

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*,
   702 A.2d 1228 (Del. 1997) .................................................................................... 7

**RULES**

Fed. R. Bankr. P. 8006 ................................................................................................. 9

## ARGUMENT

### I. THE BANKRUPTCY COURT ERRED IN DISMISSING THE AMENDED COMPLAINT IN LIGHT OF THE SUBSTANTIAL EVIDENCE THAT BIG LOTS OWNS THE TAX REFUNDS.

Big Lots' claims hinge on whether Big Lots owns the Tax Refunds.[1] The Defendants suggest that they own the Tax Refunds but do not dispute that they paid *no* consideration whatsoever for them and cannot point to a single provision in the Agreement or any other evidence that purports to transfer the Tax Refunds to the Defendants.[2] Rather, the Defendants, like the Bankruptcy Court, erroneously rely on a purported "general principal [sic] of corporate law" that all assets and liabilities are transferred with the stock." (Ans. Br. at 9; Op. at 4, App. to Opening Br. Ex. B.) Whether or not this so-called general principle exists and has application in this context is irrelevant. The general principle urged on this Court is, at best, a default rule and cannot trump the clear intention of the parties.

The record on this Appeal contains substantial evidence that the parties did not intend for the Tax Refunds to be transferred in connection with the Sale, including but not limited to the provisions of the Agreement, the balance sheets, journal entries and the

---

[1] Capitalized terms used but not defined in this reply brief have the meanings ascribed to such terms in Big Lots' opening brief.

[2] Contrary to the Defendants' unsupported statements in their answering brief (p. 9) that the Tax Refunds would continue to be owned by KBAC and its subsidiaries, Big Lots believes the evidence to date shows that the Tax Refunds were not part of the Sale. Big Lots believes that discovery will reveal that KBAC specifically negotiated a purchase price reduction to exclude the Tax Refunds from the Sale. To resolve these and other manifest factual disputes, this case should be remanded to the Bankruptcy Court for a determination on the merits following whatever discovery is deemed necessary or appropriate.

Watts Affidavit. This unrebutted evidence establishes that Big Lots received no consideration whatsoever in exchange for the Tax Refunds and did not intend to transfer the Tax Refunds pursuant to the Agreement. It also shows that the Tax Refunds were transferred to Big Lots prior to closing and thus were not transferred in connection with the Sale.

In rendering its decision, the Bankruptcy Court did not fully understand or give appropriate consideration to this evidence. At a minimum, this evidence raises questions of fact as to whether the parties intended to transfer the Tax Refunds in connection with the Sale, which they clearly did not.[3] Under the circumstances, the Bankruptcy Court should have denied the Motion to Dismiss and considered the matter on summary judgment or, at a minimum, provided the parties with an opportunity to conduct discovery prior to deciding the case on the merits. Alternatively, the Bankruptcy Court should have granted Big Lots leave to amend the Amended Complaint prior to dismissing the action. This case should be remanded to the Bankruptcy Court for further proceedings.

---

[3] The Defendants themselves raise a fact question regarding the parties' intent by asserting in their answering brief that "[t]he parties to the Agreement *understood* that KBAC and its subsidiaries would continue to own the . . . Tax Refunds." (Ans. Br. at 9.) Big Lots clearly had no such understanding and is entitled to take depositions of the Defendants to ascertain the basis for this assertion.

2

II.  **THE BALANCE SHEETS, JOURNAL ENTRIES AND WATTS AFFIDAVIT ARE HIGHLY RELEVANT AND ARE NOT EXCLUDED BY THE PAROL EVIDENCE RULE.**

Consistent with its efforts to frustrate Big Lots' right to have this case decided on the merits, the Defendants suggest that the balance sheets, journal entries and the Watts Affidavit are "irrelevant" to the instant dispute and must be excluded pursuant to the parol evidence rule. The Defendants' position lacks merit.

A.  **The Balance Sheets, Journal Entries And The Watts Affidavit Are Highly Relevant And Should Not Be Ignored.**

The balance sheets, journal entries and the Watts Affidavit are highly probative, if not determinative, with respect to the ownership of the Tax Refunds and should not be ignored, particularly in light of the fact that the Agreement itself does not delineate what assets (other than stock) were intended to be transferred to KBAC at closing.

The balance sheets reflect what assets were owned at the time of the Sale and provide uncontroverted documentary evidence that the parties did not intend for the Tax Refunds to be transferred in connection with the Sale. It is undisputed that certain estimated Tax Refunds appeared on the October 28, 2000 balance sheets but were excluded from the December 7, 2000 "Closing Date" balance sheets. (Watts Aff. ¶¶ 7-8,

120156.01600/40154972v3

15; App. to Opening Br. Ex. L.)[4]

The journal entries are consistent with the balance sheets and provide uncontroverted documentary evidence that the Tax Refunds were transferred to Consolidated Stores Corporation, Big Lots' predecessor-in-interest, *prior to the Sale.* (Watts Aff. ¶ 16 and Ex. 5 thereto, App. to Opening Br. Ex. L.)  Tellingly, the Defendants have chosen to ignore altogether this important evidence.  This case should be remanded so that all facts relevant to a decision on the merits can be aired fully and fairly.

The Watts Affidavit contains the sworn testimony of Big Lots' Vice President of Tax, who was intimately involved in the negotiation of the Agreement vis-à-vis the Tax Refunds (Watts Aff. ¶ 4, App. to Opening Br. Ex. L), and provides uncontroverted evidence that the Tax Refunds were not intended to be transferred as part of the Sale (Watts Aff. ¶¶ 13, 20, App. to Opening Br. Ex. L).  The Watts Affidavit also includes

---

[4] The Defendants' attempt to downplay the import of the balance sheets actually reinforces Big Lots' position or, at best, raises fact questions about the intent of the parties vis-à-vis the Tax Refunds.  For instance, the Defendants admit that the balance sheets were used "primarily to calculate the purchase price" (Ans. Br. at 14) but fail (for good reason) to acknowledge that no portion of the purchase price was attributed to the Tax Refunds.  Further, the Defendants disingenuously speculate that the absence of the Tax Refunds on the balance sheets "may be nothing more than evidence" that the Tax Refunds were excluded in order to avoid the improper recognition of revenue prior to its realization. (Ans. Br. at 14 and n.7.)  The Defendants fail to acknowledge that estimates of the Tax Refunds appeared on the October 28, 2000 balance sheets -- documents that the Defendants prepared -- but were intentionally excluded from the December 7, 2000 "Closing Date" balance sheets -- documents that the Defendants also prepared.  (Watts Aff. ¶¶ 7-8, 15, App. to Opening Br. Ex. L.)  The Defendants, at a minimum, have raised multiple fact questions and should be required to submit to discovery in this action.

4

unrebutted testimony that the Tax Refunds were transferred to Big Lots prior to the closing of the Sale. (Watts Aff. ¶ 16, App. to Opening Br. Ex. L.) Mr. Watts' testimony is entirely consistent with and confirmed by the balance sheets and journal entries.

In sum, the balance sheets, journal entries and the Watts Affidavit provide decidedly relevant documentary and testimonial evidence that Big Lots rather than the Defendants owns the Tax Refunds. This case should be remanded for further proceedings in the Bankruptcy Court.

### B.  The Parol Evidence Rule Does Not Bar This Court's Consideration Of The Balance Sheets, Journal Entries And The Watts Affidavit.

The parol evidence rule does not require the exclusion of the balance sheets, journal entries and the Watts Affidavit. Under Delaware law, the parol evidence rule prevents the use of extrinsic evidence to vary or contradict the terms of a written contract.[5] *See All Pro Maids, Inc. v. Layton*, Civ. A. No. 058-N, 2004 WL 1878784, *4 (Del. Ch. Aug. 10, 2004). (App. to Reply Ex. 1.) The parol evidence rule does not purport to preclude the use of extrinsic evidence that does not vary or contradict the

---

[5]   The Agreement provides that it is governed by the laws of the State of Delaware. (Agreement § 13.05, App. to Opening Br. Ex. L (Ex. 1 to Watts Aff.).)

writing itself.[6]

In this case, Big Lots is not relying on extrinsic evidence. The balance sheets are referenced in and are an integral part of the Agreement. (Agreement § 3.08, App. to Opening Br. Ex. L (Ex. 1 to Watts Aff.).) They are not extrinsic. Even if the journal entries and the Watts Affidavit could be considered extrinsic evidence, Big Lots is not seeking by such evidence to vary or contradict the terms of the Agreement. Rather, Big Lots seeks merely to explain what assets were or, as in this instance, were not transferred to KBAC in connection with the Sale. The Agreement itself deals with the transfer of stock; it does not expressly address the transfer of the Tax Refunds. In fact, the Bankruptcy Court specifically found that the Agreement does not address whether the

---

[6] This case is easily distinguishable from the primary case relied upon by the Defendants for their argument that this Court should ignore the balance sheets, journal entries and the Watts Affidavit. That case, *City Investing Co. Liquidating Trust v. Cont'l Cas. Co.*, 624 A.2d 1191 (Del. 1993), involved an attempt to vary with parol evidence the clear meaning of very specific language in a trust agreement. In contrast, the present case does not involve specific contractual language because the Agreement does not expressly address the ownership or transfer of the Tax Refunds. Notably, though the Defendants suggest that the Agreement is "plain and clear on its face" (Ans. Br. at 13), they have not and cannot cite to a single provision of the Agreement that deals with the transfer or ownership of the Tax Refunds.

6

Tax Refunds "were or were not sold." (Op. at 2, App. to Opening Br. Ex. B.)[7]

Because the balance sheets, journal entries and the Watts Affidavit are not extrinsic and/or do not vary or contradict the express terms of the Agreement, such evidence may be offered to prove that Big Lots has an ownership interest in the Tax Refunds. Big Lots should be provided an opportunity to do so.

Even if the Agreement could be interpreted as implicitly providing for the transfer of the Tax Refunds in connection with the Sale of the stock, which it cannot, the Agreement is, at best, ambiguous with respect to this issue. It is well settled under Delaware law that in situations where a contract is subject to different meanings and is thus ambiguous, or, more precisely, "not reflective of the parties['] shared intent," a court is not free to disregard and must consider extrinsic evidence of what the parties actually intended. *See City Investing Co. Liquidating Trust v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993); *see also Big Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992) ("Because the intent of the parties cannot be gleaned from the language of the

---

[7] The Defendants did not appeal and are bound by the Bankruptcy Court's finding that the Agreement does not deal with the transfer of the Tax Refunds. The crux of the Defendants' parol evidence argument is that the Agreement contains "plain and clear" language governing the instant dispute. Such argument is contrary to the Bankruptcy Court's ruling and arguably has been waived. Even if the Defendants somehow preserved their purported parol evidence argument, notwithstanding their failure to appeal the Bankruptcy Court's finding, such argument lacks textual support in the Agreement and otherwise lacks merit for the reasons discussed herein.

7

[contract], we look elsewhere for that intent.").[8] Accordingly, to the extent the Agreement is ambiguous, the balance sheets, journal entries and the Watts Affidavit may and indeed must be considered in determining whether the parties intended to transfer the Tax Refunds in connection with the Sale.[9]

The Motion to Dismiss should not have been granted in light of the balance sheets, journal entries and the Watts Affidavit, which show that the parties did not intend to transfer the Tax Refunds in connection with the Sale. This case should be remanded.

---

[8]   In construing an ambiguous contractual provision, a court may consider evidence of prior agreements and communications of the parties, as well as trade usage or course of dealing. *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1233 (Del. 1997). This is true regardless of the presence of a routine integration clause, such as the integration clause contained in Section 13.10 of the Agreement. *Id.* at 1233 n.10. As the Supreme Court of Delaware observed in *Eagle Industries*:

> In a perfect world, integrated contracts would always reflect plainly and accurately the compromises and allocation of risk that the parties intend. The reality is that the contractual language defining rights and obligations of the parties is sometimes ambiguous. It is a court's duty to preserve to the extent feasible the expectations that form the basis of a contractual relationship. When, as in the instant case, the meaning and application of contract terms are uncertain, a court fulfills this duty by considering extrinsic evidence.

*Id.* at 1233-1234.

[9]   To the extent this Court determines that the Agreement is ambiguous, this Court necessarily must conclude that the Bankruptcy Court erred in granting the Motion to Dismiss. Where ambiguity exists and the determination of the parties' intent depends on the credibility of extrinsic evidence, then such determination is to be made at trial by the finder of fact. *See In re Kam Kuo Seafood Corp.*, 76 B.R. 297, 302 (Bankr. S.D.N.Y. 1987). Such determination certainly is not appropriate on a motion to dismiss, and should not be made without affording the non-moving party an opportunity to conduct discovery.

III. **THE MOTION FOR SUMMARY JUDGMENT AND RELATED DOCUMENTS ARE PART OF THE RECORD ON APPEAL AND MAY BE CONSIDERED BY THIS COURT IN DETERMINING WHETHER THE BANKRUPTCY COURT ERRED IN GRANTING THE MOTION TO DISMISS.**

In a final effort to shield from review the true merits of Big Lots' claims, the Defendants argue that the Motion for Summary Judgment and "related documents," including presumably, the balance sheets, journal entries and the Watts Affidavit, are not part of the record on appeal. The Defendants again ask this Court to turn a blind eye to these highly relevant and probative documents. As detailed below, the Defendants' argument lacks merit and, in any event, was abandoned and waived long ago.

   A.  **The Summary Judgment Papers Were Designated Pursuant To Bankruptcy Rule 8006 And Are Part Of The Appellate Record.**

The Motion for Summary Judgment and related documents were properly designated as items to be included in the record on appeal and remain in the appellate record before this Court.

Big Lots fully complied with Bankruptcy Rule 8006. Bankruptcy Rule 8006 requires an appellant (here, Big Lots) to file and serve a "designation of the items to be included in the record on appeal and a statement of the issues to be presented." Fed. R. Bankr. P. 8006. Bankruptcy Rule 8006 expressly provides that "the record on appeal shall include the items so designated." *Id.* Big Lots included the summary judgment papers in its Bankruptcy Rule 8006 designation (Dkt. No. 116, App. to Reply Ex. 2) and otherwise complied with the requirements of Bankruptcy Rule 8006. The Defendants have not and cannot contend otherwise.

9

**B. The Defendants Abandoned Their Motion To Strike, Failed To Designate It As An Item To Be Considered On Appeal And Otherwise Waived Any Argument That The Motion For Summary Judgment And Related Documents Are Not Part Of The Record On Appeal.**

The Motion for Summary Judgment and related documents remain in the record on this Appeal and may be considered by this Court. Though the Defendants filed a motion to strike the summary judgment papers from the record on appeal (the "**Motion to Strike**") (Dkt. No. 117, App. to Reply Ex. 3), the Defendants clearly abandoned the Motion to Strike, failed to designate it as an item to be considered on appeal and otherwise waived any argument that the summary judgment papers should be stricken from the record in this Appeal.

The docket in this case reflects that on September 13, 2004 Big Lots timely filed its designation of items to be included in the record on appeal. Item numbers 18 and 19 on Big Lots' designation relate to the Summary Judgment Motion. (App. to Reply Ex. 2.) On September 23, 2004, the Defendants filed in the Bankruptcy Court the Motion to Strike, along with a counter-designation of items to be included on appeal (Dkt. No. 118, App. to Reply Ex. 4). The Defendants did not designate the Motion to Strike as an item to be included in the record on appeal. (App. to Reply Ex. 4.) On October 7, 2004, Big Lots timely filed in the Bankruptcy Court its response to the Motion to Strike (Dkt. No. 122, App. to Reply Ex. 5).

For *nine* months, the Defendants have taken *no* action whatsoever to pursue the Motion to Strike. The Defendants did not timely file a reply in support of the Motion to Strike and failed to file a certification of counsel or otherwise submit the matter to the

Bankruptcy Court for determination. In addition, as noted above, the Defendants failed to designate the Motion to Strike as an item to be included in the appellate record.

In an abortive attempt to justify their failure to prosecute the Motion to Strike or preserve the arguments therein, the Defendants maintain (but do not demonstrate) that the Motion to Strike somehow was transferred to this Court. The Defendants' argument is not supported by the record in this case and is contrary to applicable law. The pleadings relating to the Motion to Strike were not listed as items to be considered on appeal. Further, the case law makes clear that a bankruptcy court, not the district court presiding over an appeal, is required in the first instance to resolve disputes over the proper contents of the appellate record. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 802 (E.D. Pa. 1986).

The Defendants should not now be permitted to rely on pleadings and arguments that are not part of the appellate record and that were long ago abandoned and clearly waived.

### C.  The Motion To Strike And The Arguments Therein Lack Merit.

Even if this Court somehow determines that the Defendants preserved their right to raise and rely on arguments contained in the Motion to Strike, such arguments clearly lack merit.

The Motion to Strike primarily hinges on the overly simplistic argument that the summary judgment papers are not part of the record on appeal because Big Lots allegedly failed to object formally to the notice of completion of briefing (Dkt. No. 102) filed after the parties fully briefed the Motion to Dismiss. (Mot. to Strike at ¶¶ 11-12, App. to

11

Reply Ex. 2.) The Defendants purport to resurrect this argument on appeal. (Ans. Br. at 15.)

As the Defendants are or should be aware, a notice of completion of briefing is not a substantive document that calls for a formal response. Nothing in the Bankruptcy Rules or elsewhere requires a party to object to a notice of completion of briefing. In addition, though ignored by the Defendants, at the hearing on the Motion to Dismiss, Big Lots expressly designated the summary judgment papers as relevant to the Bankruptcy Court's consideration. In fact, Big Lots' counsel urged the Bankruptcy Court to deny the Motion to Dismiss in favor of addressing the issues raised by the pleadings in the context of the pending Motion for Summary Judgment. (August 23, 2004 Tr. Hr' at 41, App. to Opening Br. Ex. O.)[10]

Further, the Defendants ignore what actually transpired in this case, including the fact that the Bankruptcy Court considered (but clearly misapprehended the import of) the balance sheets in reaching its erroneous conclusion. (Opinion at 4.) The Defendants also fail to acknowledge that the content and import of the journal entries, as well as the proffered testimony of Mr. Watts, were raised and described to the Bankruptcy Court at length at the PI Hearing. (April 29, 2004 Hr' Tr. at 44-62, App. to Reply Br. Ex. 6.)

---

[10] Specifically, Big Lots' counsel stated: "There are a variety of facts and circumstances that need to be flushed out on discovery and this case should be held over through discovery and through the Summary Judgment Motion . . . stage so [Big Lots] can do . . . discovery." (August 23, 2004 Tr. Hr' at 41, App. to Opening Br. Ex. O.) Ultimately, the Bankruptcy Court rejected counsel's request and ruled on the Motion to Dismiss, notwithstanding that Big Lots had not then and still has not been afforded an opportunity to conduct discovery.

This Court must consider the full appellate record, including the summary judgment papers, in determining whether the Bankruptcy Court erred in granting the Motion to Dismiss. It is well established that the record on appeal should contain all documents necessary to afford the reviewing court a full understanding of the case. *See, e.g., Neshaminy,* 62 B.R. at 802; *John P. Maguire & Co., Inc. v. Sapir (In re Candor Diamond Corp.),* 26 B.R. 844, 846 (Bankr. S.D.N.Y. 1983). This principle holds true and applies in this case, irrespective of whether the Bankruptcy Court expressly considered all of the summary judgment papers. *See Candor Diamond,* 26 B.R. at 846 ("Documents not considered by the bankruptcy court in reaching its decision may be included in the record on appeal provided that the appellate court is informed that such materials were not considered by the trial court in reaching its decision in the matter appealed.").

The record in this Appeal contains all of the pleadings and documents that informed or should have informed the Bankruptcy Court's decision.[11] The Bankruptcy Court heard the arguments raised in the Motion for Summary Judgment, reviewed some or all of the related documents, based its decision in part on its erroneous interpretation of the balance sheets, and committed reversible error by granting the Motion to Dismiss. In order to view the Bankruptcy Court's decision in its proper context, this Court must review the full appellate record, including the summary judgment papers.

---

[11]    Admittedly, it is unclear whether and to what extent the Bankruptcy Court actually reviewed the journal entries and the Watts Affidavit prior to rendering its decision.

13

## CONCLUSION

For the foregoing reasons, as well as those raised in Big Lots' opening brief, the decision of the Bankruptcy Court should be reversed and the matter remanded to the Bankruptcy Court for further proceedings.

Dated: July 11, 2005

BLANK ROME LLP

_____
Michael D. DeBaecke (Del. Bar No. 3186)
Jason W. Staib (Del. Bar No. 3779)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:   (302) 425-6400
Facsimile:   (302) 425-6464

- and -

VORYS, SATER, SEYMOUR AND PEASE LLP
Robert J. Sidman
William D. Kloss, Jr.
52 East Gay Street
Columbus, OH 43215
Telephone:   (614) 464-6400
Facsimile:   (614) 719-4962

*Counsel for Appellant*
*Big Lots Stores, Inc.*

## CERTIFICATE OF SERVICE

I, *Jason W. Staib*, certify that I am not less than 18 years of age, and that on July 11, 2005, I caused service of the attached *Reply Brief of Appellant Big Lots Stores, Inc.* to be made on the parties listed below as indicated.

Under penalty of perjury, I declare that the foregoing is true and correct.

/s/ Jason W. Staib
Jason W. Staib

**BY ELECTRONIC AND HAND DELIVERY**

Joel A. Waite, Esquire
M. Blake Cleary, Esquire
*Young Conway Stargatt & Taylor, LLP*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899

**BY ELECTRONIC AND FIRST CLASS MAIL**

Mark N. Polebaum, Esquire
Mitchel Appelbaum, Esquire
Dennis L. Jenkins, Esquire
*Wilmer Cutler Pickering Hale and Dorr, LLP*
60 State Street
Boston, MA 02109

120156.01600/40155047v1